RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0224P (6th Cir.)
File Name: 00a0224p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

MICKEY GREGORY, as
Administrator of the Estate of
Gerald Gregory,
      *Plaintiff-Appellant
(98-5913/5976/6174)/
Cross-Appellee,*

     *v.*

SHELBY COUNTY,
TENNESSEE; A.C. GILLESS,
individually and in his
capacity as Sheriff of Shelby
County, Tennessee; JERRY
ELLIS,
      *Defendants-Appellees,*

RHETT SHEARIN,
      *Defendant-Appellee/
Cross-Appellant (98-6175).*

Nos. 98-5913/
5976/6174/6175

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 95-03040—J. Daniel Breen, Magistrate Judge.

Argued: December 16, 1999

1

Decided and Filed:  July 12, 2000

Before:  RYAN and NORRIS, Circuit Judges; NUGENT,
District Judge.

_____

**COUNSEL**

**ARGUED:**  Stephen R. Leffler, Memphis, Tennessee, for
Appellant.  Brian L. Kuhn, FORD & HARRISON, Memphis,
Tennessee, Fred E. Jones, Jr., STEWART, WILKINSON &
WILSON, Memphis, Tennessee, for Appellees.  **ON BRIEF:**
Stephen R. Leffler, Memphis, Tennessee, for Appellant.
Brian L. Kuhn, FORD & HARRISON, Memphis, Tennessee,
Fred E. Jones, Jr., STEWART, WILKINSON & WILSON,
Memphis, Tennessee, Michael M. Richards, BAKER,
DONELSON, BEARMAN & CALDWELL, Memphis,
Tennessee, for Appellees.

_____

**OPINION**
_____

   NUGENT, District Judge.  The plaintiff, Mickey Gregory,
as Administrator of the Estate of Gerald Gregory, appeals four
decisions of the trial court:  (1) the grant of a directed verdict
to defendant Shelby County; (2) the grant of remittitur to
defendants Rhett Shearin and Jerry Ellis; (3) the dismissal of
the official capacity claims against defendant Rhett Shearin;
and, (4) the denial of the plaintiff's motion for attorney fees
against defendant Shelby County.

   The defendant Rhett Shearin cross-appeals arguing the trial
court committed reversible error by not compelling a witness

_____

   [*] The Honorable Donald C. Nugent, United States District Judge for
the Northern District of Ohio, sitting by designation.

While the record in this case is void of any indication that the witness "persist[ed] in refusing to testify concerning the subject matter of his statement despite an order of the court to do so..." and thus the trial court abused its discretion, any error that may have resulted was harmless. Any pressure upon the witness, or any pressure of threat applied to the witness by the trial court would undoubtably have been unavailing as the witness is already serving a life sentence.

to testify and instead allowing the videotaped deposition of the witness to be introduced at trial. The plaintiff argues the trial court need not threaten a witness serving a life sentence with contempt in order to find a witness unavailable and even if the trial court erred in its decision, the error was harmless.

We affirm the trial court's directed verdict, dismissal of official capacity claims against Rhett Shearin, and the denial of the motion for attorney fees. We reverse the grant of remittitur to defendants Rhett Shearin and Jerry Ellis. And, we find no reversible error with respect to the use of the witness's videotaped deposition.

## BACKGROUND

The allegations which follow were made in the Second Amended Complaint. Gerald Gregory, the decedent, was confined in the Shelby County jail on March 21, 1995. Jerry Ellis, a fellow inmate, was housed in the cell next to Gerald Gregory. That night, Mr. Ellis attacked Mr. Gregory inflicting severe injuries resulting in Mr. Gregory's death on March 24.

Mickey Gregory, the administrator of his brother's estate, filed this action against the county, numerous county officials and the inmate who killed his brother. The Second Amended Complaint alleged that the county officials "inflicted cruel and unusual punishment upon the Deceased...in violation of the Eighth Amendment....and deprived him of life and liberty without due process in violation of the Due Process Clause of the Fifth and Fourteenth Amendments...." As for Mr. Gregory's killer, Jerry Ellis, the Second Amended Complaint sought recovery under Tennessee law.

With respect to the allegations against the county defendants, the Second Amended Complaint alleged:

...At the time of the injuries, a policy or custom implemented by County Defendants was in effect that allowed inmates out of their cells for showers, exercise,

and other purposes without adequate supervision or other measures to ensure the safety of the inmates and to protect them from harmful contact from other inmates.

...At the time of the injuries and death of Gerald Gregory, County Defendants knew or should have known that the inmates on J-Pod posed a severe risk of harm to one another and required a high level of supervision. County Defendants were acting under color of law pursuant to authority granted by Shelby County. Their acts and omissions were undertaken with deliberate indifference to the safety of the Plaintiff.

...County Defendants directly and proximately caused the Deceased's grievous injuries and eventual death by acting with deliberate indifference in maintaining a jail unfit for the care and custody of the prisoners and extremely dangerous to its inhabitants. Defendants had ample notice of the unconstitutional conditions by virtue of the notorious overcrowding, inadequate staffing and supervision, the absence of classification of prisoners on the basis of their known dangerousness, and the violent and hostile climate at the jail. Gerald Gregory, as a known homosexual, was in a greater position of danger within the jail population than a heterosexual inmate would have been. County Defendants were on notice of these defects by virtue of these conditions....

The case was referred to the magistrate judge who tried the case by agreement of all the parties.

At trial, deputy jailer Robert Hardy testified that on March 22, the day after the attack took place, he found Mr. Gregory bleeding in his cell. Describing Mr. Gregory, Officer Hardy testified, "[h]is eyes were all swollen. His lips were busted. Dried blood was on his face, looked like he had been beaten." Although badly injured, Mr. Gregory said that "he was jumped upon while he was coming back from the showers on the evening shift."

his testimony then was admitted into evidence by way of a previous videotaped deposition.[5]

Appellee's sole assignment of error is that the trial court should have ordered the witness to testify under threat of contempt proceedings prior to finding the witness "unavailable".

Rule 804(a) provides "'[u]navailability as a witness' includes situations in which the declarant...(2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so...." FED. R. EVID. 804(a)(2).

The Advisory Committee Notes to Rule 804 provide some guidance on this issue:

Note to Subdivision (a)...(2) A witness is rendered unavailable if he simply refuses to testify concerning the subject matter of his statement despite judicial pressures to do so, a position supported by similar considerations of practicality. *Johnson v. People*, 152 Colo. 586, 384 P.2d 454 (1963); *People v. Pickett*, 339 Mich. 294, 63 N.W.2d 681, 45 A.L.R.2d 1341 (1954). Contra, *Pleau v. State*, 255 Wis. 362, 38 N.W.2d 496 (1949).

FED. R. EVID. 804 Advisory Committee's note.

---

[5]Under Rule 804(b)(1) Mr. Campbell's former testimony was deemed admissible. Rule 804(b)(1) provides:
    (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
        (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. FED. R. EVID. 804(b)(1).

## UNAVAILABILITY OF WITNESS

On cross-appeal, defendant Shearin contends the magistrate judge erred by permitting the videotaped deposition testimony of inmate Dryan Campbell to be introduced during trial based upon a finding that the witness was unavailable pursuant to Federal Rule of Evidence 804(a)(2).

Evidentiary determinations of the trial court are subject to an abuse of discretion standard. *Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352 (6th Cir. 1997) (citing *Hancock v. Dodson*, 958 F.2d 1367, 1371 (6th Cir. 1992)); *United States v. Rios*, 842 F.2d 868, 872 (6th Cir. 1988) (*per curiam*), *cert. denied*, 488 U.S. 1031, 109 S. Ct. 840, 102 L. Ed. 2d 972 (1989).

Dyran Campbell was an inmate housed in J-Pod at the Shelby County Jail at the time of the incidents giving rise to this litigation. He was called as a witness at trial. After having been sworn Mr. Campbell stated:

...Yeah, but one thing, I have chosen not to testify in this case at this time because I have been--taken a lot of unnecessary, personal, inmate--harassment by officers and inmates where I was housed at. I have been, like I said, took through a lot of different changes, whatever. The last time I talked to the lawyer in this case right here–

The Court:    Wait a second here. Are you saying you are not going to testify, not going to answer any questions?

The Witness:    No, sir. I haven't got nothing to say.

The trial court determined Dryan Campbell was "unavailable" under Federal Rule of Evidence 804(a)(2), and

Mr. Gregory was transported to the Regional Medical Center, and he died approximately one and a half days after he was discovered in his cell. The county medical examiner, Dr. O.C. Smith testified that he ruled the death a homicide. The medical examiner further testified that the autopsy revealed that there was significant brain damage, and it was possible for a person to be pushed or propelled into something with such force to produce the injury and death of the decedent.

The jury also heard testimony from Dryan Campbell another inmate in the unit where the attack occurred. When Mr. Campbell was called to testify, he refused to answer questions because of alleged harassment by officers and other inmates. Based upon Mr. Campbell's refusal to testify, the trial court ruled that the witness was unavailable, and allowed his previously taken deposition to be read into the record. This testimony included the following:

Q.  Do you remember a fight in March of 1995 between Jackie Stewart[1] and an inmate by the name of Jerry Ellis?

A.  What I remember is that one night Ellis and Stewart got to arguing, and then the next night, the next day, they argued a little more the next morning and then when Officer Shearin came on, Officer Shearin opened up Stewart's door and let Ellis--let Jerry Ellis go into Stewart's cell and I heard a lot of beating and banging around. And Ellis was whooping and hollering, talking about he was beating him and, you know, making him do sexual things with him and stuff like that.

***

Q.  Now could you--in your cell could you see what happened?

---

[1]While in the county jail, decedent was listed as Jackie Stewart, although his real name was Gerald Gregory.

A.   No, sir, I could not see what happened.

Q.   What could you see?

A.   The only thing I saw, I saw Officer Shearin when he walked past my cell he was unzipping his pants, and he said, 'I'm going back here and get me a blow job from Stewart'.  And he told Ellis to hurry up doing what he was doing because he was going to make Stewart suck his penis, and that was all I could see.

Inmate Campbell further testified as follows:

Q.   Did you hear Officer Shearin say anything before he opened those two cell doors?

A.   Officer Shearin came down into the pod, he was talking to Ellis.  He told Ellis, okay, I'm going to let you in.  Jerry Ellis asked Officer Shearin would he let him into Stewart's cell and Officer Shearin walked past my cell, I was standing up in front of my door, he walked past my cell and he told Ellis, okay, I'm going to let you in.  And walked back up to the front where the control box was at to the cells, he opened up the box and opened up Stewart's door and he opened up Ellis' door.

Q.   At that time describe for us what you heard?

A.   Okay, I heard Officer Shearin tell Ellis he was going to let him into his cell.  And then after Officer Shearin opened up both cells, he didn't say it real loud, you know what I'm saying, he didn't say it loud.  He said, Uh-huh, Stewart, you know we got you.  I let Ellis into your cell. We got you now....

Official jail policy did not permit two doors of a unit to be open at the same time.  Novella Smith-Arnold, who worked in the jail as a counselor, testified that J-Pod, where the incidents giving rise to this litigation occurred, was a dirty area and other pods in the prison were like the Taj Mahal

termination.    However, Deputy Jailer R.L. Shearin resigned his position with the Shelby County Sheriff's Office on May 29, 1997, prior to the disposition of these charges which were totally unrelated to the incident of March 21, 1995.

There can be little doubt that Officer Shearin is not a model employee.  And, the jury in this case was convinced that Officer Shearin played a significant role in the death of Gerald Gregory as evidenced by the verdict it returned.  His involvement in the incident can never be tolerated in a civilized society, and the jury made that known loud and clear by its verdict.  Regardless, we cannot ignore that from the County's perspective following its investigation no violation of jail policies and procedures had occurred.  Sergeant Cash testified that Officer Shearin failed to document the beating and that he had a pattern of insufficiently documenting events. He was disciplined for this, but he was not terminated. Officer Shearin apparently had a habit of violating departmental policy as evidenced by the affidavit of Officer Tucker.  At least two of the incidents subsequent to the March 21 incident involving Officer Shearin were serious enough for him to be terminated.  We do not discount the serious nature and the serious consequences of the incidents of March 21, 1995.  Nonetheless, we bear in mind, as we must, that as regards the March 21 events, the County did not find a violation of its policies and procedures warranting the termination of Officer Shearin's employment.  Right or wrong, that is the County's position.  Thus, from the County's perspective, more serious incidents occurred subsequent to March 21 which warranted Officer Shearin's termination, and those incidents were more likely the catalysts leading to Officer Shearin's resignation.  We find no clear error in the magistrate judge's factual analysis and his ultimate conclusion that this suit was not the catalyst for Officer Shearin's termination.  Accordingly, the magistrate judge's determination that Appellant was not the "prevailing party" is AFFIRMED.

Shearin in his official capacity were dismissed prior to trial, and the claims against the Shelby County were dismissed prior to the jury's deliberation. Whatever fees the County may have agreed to pay on behalf of Officer Shearin does not change the fact that the Appellant must be the "prevailing party" with respect to its claims against Shelby County to be entitled to an award of attorney's fees. We agree with the magistrate judge when he determined that the plaintiff was not the prevailing party against the County, the party against whom he seeks attorney's fees. Accordingly, we find no error in the magistrate judge's findings.

As Appellant was given no judicial relief against the County and Appellant did not receive any benefit in the form or damages or injunctive relief, in order for the Appellant to be considered the "prevailing party", he must show he was the "catalyst' for defendant's changed behavior. The first prong of the catalyst test is whether there is a causal connection between the suit and the allegedly beneficial outcome. *Payne*, 88 F3d at 399. Appellant contends that this lawsuit was the driving force behind Officer Shearin's dismissal from employment with the County. However, Appellant offers no evidence to support this position. Officer Shearin left the County's employ over two years after Gerald Gregory's death. While chronological evidence is but one factor to be considered in a "catalyst" effect analysis, *Id.*, in this instance we find chronological evidence unpersuasive in light of the affidavit of J.P. Tucker, Inspector with the Shelby County Sheriff's Office and Assistant Commander of the Internal Affairs Bureau. Officer Tucker stated in relevant part:

Deputy Jailer Shearin was not terminated by the Shelby County Sheriff's Office as a result of the incident involving Gerald Gregory on March 21, 1995. While Deputy Jailer Shearin was disciplined as a result of his failure to update his logs on the date of the above incident, he was, in fact, found in violation of departmental policy on four (4) occasions subsequent to that date, two (2) of which could have resulted in his

compared to J-Pod. Ms. Smith-Arnold also testified as follows:

Q. Prior to March of 1995, and including March of 1995, did you have opportunity to go into J Pod?

A. I always went in there. That was a role of mine.

Q. About what time of day was your normal trip to J Pod?

A. It depended. Sometimes I would get a call at my office from a deputy or chief jailer saying come see a prisoner for us. If I went in earlier, I go to J Pod sometimes three times a day, sometimes twice, and sometimes I would go once, and I would also go on Saturdays.

Q. When you would go into J Pod did you ever notice anything unusual about the cell doors?

A. Not unusual. The cell doors would be open periodically.

Q. More than one at a time?

A. Yes, of course.

Q. How often did you see that occur?

A. Often.

Sergeant William Cash of the Internal Affairs Division of the Sheriff's Office conducted an investigation of the incident and determined that no violation of jail policies and procedures had occurred. However, Sergeant Cash testified that Officer Shearin failed to document the beating and that he had a pattern of insufficiently documenting events.

Prior to trial, Defendants Claude Baker, Charles Blankenship, Robert Hardy, and Frances Childress were dismissed from the litigation by the plaintiff. During the second day of trial, Sheriff A.C. Gilless and Shelby County were dismissed in their individual capacities. The County Commissioners were dismissed in both their individual and official capacities.[2] The trial court reserved its ruling on official capacity claims against the County and Sheriff A.C. Gilless. Following a two-day jury trial, the magistrate judge granted a directed verdict to Shelby County and Sheriff A.C. Gilless. The jury returned a verdict awarding compensatory damages in the amount of $778,000.00 against Jerry Ellis and Rhett Shearin. Subsequently, the jury assessed punitive damages in the amount of $75,000.00 against Jerry Ellis and $2,200,000.00 against Rhett Shearin.

Plaintiff filed a motion for new trial against Shelby County and for an award of attorney fees against the County. Defendants Shearin and Ellis filed their own motions for new trial or in the alternative, for remittitur. The magistrate judge denied plaintiff's motion for new trial and for attorney's fees, and he granted Defendants' motion for remittitur.

---

[2]The judgment states that the Commissioners are dismissed in their individual capacities and in parentheses appears the names of the Commissioners. It should be noted that in the caption of the Second Amended Complaint Commissioner Julian T. Bolton is listed as a defendant, however, this name does not appear in the parenthetic listing of Commissioners in the judgment entry. Since the judgment makes clear that the Commissioners are dismissed in both their individual and official capacities we conclude omission of Julian Bolton's name is a mere oversight. In any event, no party has challenged dismissal of the Commissioners.

plaintiff had presented no evidence to support a finding of liability on the part of the municipality. As a consequence, the court dismissed all claims against Shelby County at the close of the proof. While plaintiff was a prevailing party as to some of the defendants, it cannot be said that he prevailed against the county, the sole party from which he now seeks attorney's fees.

District courts have discretion, pursuant to 42 U.S.C. § 1988, to award attorney's fees to a "prevailing party" in a civil rights suit. *Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304, 308 (6th Cir. 1988). Although discretionary, a district court should award fees to a plaintiff if that plaintiff prevails. *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402-03 (1968). A prevailing party has been defined as one who can point to a resolution of [a] dispute which changes the legal relationship between itself and the defendant. *Payne* 88 F.3d at 397; *see also Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792093, 109 S. Ct 1486, 1494 (1989). A prevailing may also be defined as a party who achieves a substantial portion of the relief sought. In any event, there must be some benefit to the plaintiff in the form of monetary damages, injunctive relief or a voluntary change in defendant's conduct. *Woolridge v. Marlene Indus.*, 898 F.2d 1169, 1173-74 (6th Cir. 1990). We have recognized that when no judicial relief is ordered a plaintiff may qualify for "prevailing party" status if he can show he was the "catalyst" for the defendant's changed behavior. *Payne* 88 F.3d 392; *Othen v. Ann Arbor Sch Bd.*, 699 F.2d 309, 313 (6th Cir. 1983).

The first theory advanced by Appellant is clearly without merit. As a threshold matter, "a suit against a government official in his or her personal capacity cannot lead to imposition of fee liability upon the governmental entity. A victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him." *Kentucky v. Graham*, 473 U.S. 159, 167-68 105 S. Ct. 3099, 3106 (1985). The claims against Officer

courts.   This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction.  Accordingly, we find no error in the magistrate judge's dismissal of the official capacity claims against Officer Shearin.

## ATTORNEY FEES

In support of his claim for attorney's fees. Appellant advances two theories of recovery against Shelby County: (1) if the trial court was correct in finding that Shelby County was the real party in interest and in dismissing this action against Officer Shearin in his official capacity, the County is liable to pay attorney's fees based upon the success in prosecuting the County's employee; (2) the lawsuit resulted in the County's dismissal of Officer Shearin.  More specifically, Appellant contends that because the County is the real party in interest, it stepped into the shoes of Officer Shearin.  Since the County reimbursed Officer Shearin for his legal fees, if would be logically inconsistent for the County to offer to pay the fees of its employee for whom a judgment is entered against, then claim to be the "prevailing party".

This Circuit has applied two standards of review with respect to this issue: (1) a clear error standard is applied when reviewing the factual findings underlying the trial court's determination of "prevailing party" status; and (2) an abuse of discretion standard is used for the denial of an award of fees. *Payne v. Board of Educ., Cleveland City Sch.*, 88 F.3d 392, 397 (6th Cir. 1996) (citing *Heeren v. City of Jamestown*, 39 F.3d 628, 631 (6th Cir.1994) (citations omitted) for clear error; citing *Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304, 308 (6th Cir. 1988) for abuse of discretion).

With respect to the attorney fee issue the magistrate judge reasoned:

> ...the court did find that the lawsuit against the jailer, a county employee, was in actuality an action against the county.   The court further concluded, however, that

## DIRECTED VERDICT

On appeal, Appellant contends the trial court improperly dismissed Shelby County prior to sending the case to the jury.[3]  In support of this contention, Appellant states that the question of whether Shelby County adopted an unconstitutional custom at the jail and the question of whether that alleged custom caused the death of Gerald Gregory were for the jury to decide.  No one disputes the official policy of the County was that no two cell doors of the J-Pod were to be open simultaneously.  The Appellant argues that testimony from Novella Smith-Arnold is evidence necessary to show a custom that superseded the policy.  Appellant takes Ms. Smith-Arnold's testimony a step further arguing that the custom was honored more often than the official policy.

Shelby County contends the requisite elements of municipal liability in a § 1983 action were not established.  Specifically, the County contends the Appellant failed to show the presence of a policy or custom which deprived the Appellant of a federally protected right.  In the alternative, Appellee contends that even if a policy was established, Appellant has failed to show a direct link between the policy and the injuries sustained.

This court reviews *de novo* the district court's disposition of a Rule 50(a) motion for judgment as a matter of law. See *Snyder v. AG Trucking, Inc.*, 57 F.3d 484, 490 (6th Cir.1995). And, this court applies the same standard on review as the district court applies in deciding such motions. *Middleton v. Reynolds Metals Co.*, 963 F.2d 881, 882 (6th Cir.1992); *Monette v. AM-7-7 Baking Co.*, 929 F.2d 276, 280 (6th Cir.1991).

---

[3]In his brief in support, Appellant also argues the trial court erred by dismissing Sheriff A.C. Gilless.  None of the four Notices of Appeal filed by Appellant state that he is appealing the decision to dismiss Sheriff Gilless.  Whether Sheriff Gilless was properly dismissed from this suit prior to jury deliberations is not before this Court.

"Judgment as a matter of law should be granted only where a reasonable juror, relying on the evidence put forth at trial, could not find for the plaintiff on each of the elements of her claim." *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 798 (6th Cir. 1998) (citing *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 306 (6th Cir.), *cert. denied*, 522 U.S. 817, 118 S.Ct. 67, (1997). The court is not to weigh the evidence or judge the credibility of witnesses, and it must make all reasonable inferences in favor of the nonmoving party. *Id*. (citing *Monday v. Oullette*, 118 F.3d 1099, 1101-02 (6th Cir.1997)).

We turn now to the merits of the claim.

42 U.S.C. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

To establish liability under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that he was subjected or caused to be subjected to this deprivation by a person acting under color of state law. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155, 98 S. Ct. 1729, 1732-33 (1978)).

It is firmly established that a municipality, or as in this case a county, cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents. *Monell v. New*

claims for *respondeat superior* liability was in error. According to Appellant, Tennessee law allows him to hold the County liable for the negligent actions of Officer Shearin if the acts occurred in the scope of his employment. Therefore, to succeed on its pendent claim for wrongful death, plaintiff must sue Officer Shearin in his official capacity.

"The district court's ruling on a Rule 12(b)(6) motion to dismiss is a question of law subject to *de novo* review." *United Ass'n of Journeymen & Apprentices of the Plumbing and Pipefitting Indus, Local No. 577 v. Ross Bros. Construction Co.*, 191 F.3d 714, 716 (6th Cir. 1999) (quoting *Spurlock v. Satterfield*, 167 F.3d 995, 1000 (6th Cir.1999)). We construe the complaint in the light most favorable to the plaintiff and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle him to relief. *Mixon v. State of Ohio*, 193, 400 F.3d 389 (6th Cir. 1999) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.1998)). Furthermore, we accept all of plaintiff's factual allegations as true. *Id*. (citing *United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir.1993)), but we need not accept as true legal conclusions or unwarranted factual inferences. *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987)).

Title 28 U.S.C. § 1367(c) provides that district courts may decline to exercise supplemental jurisdiction over a claim...if...in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

The Tennessee Governmental Tort Liability Act ("TGTLA"), T.C.A. § 29-20-101 *et seq*., provides in pertinent part: "[t]he circuit courts shall have exclusive original jurisdiction over any action brought under this chapter...." Tenn. Code Ann. § 29-20-307.

In this instance, the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state

action. Not only did Officer Shearin purposely open Inmate Ellis's cell door and then allow him into Mr. Gregory's cell, he knew the beating occurred and let Mr. Gregory suffer through the night with his injuries. Furthermore, there was evidence that Officer Shearin forced Mr. Gregory to perform oral sex on him. Second, Gerald Gregory lost his life as a result of defendant's action. We have upheld the jury's compensatory damage award in this case and by doing so implicitly conclude that the injuries and conscious pain and suffering Mr. Gregory endured were severe. We do not believe there exists a great disparity between the actual harm suffered by Mr. Gregory and the punitive damage award. Finally, the third factor provides little guidance in this determination as the parties have provided no evidence of similar jury verdicts on this issue.

Upon review of the relevant factors in *BMW*, we believe that the punitive damage award imposed against Officer Shearin was appropriate. While indeed the $2.2 million dollar punitive damage award is large, it bears a reasonable relationship to the jury's $778,000 compensatory damage award. Mr. Gregory suffered severe physical abuse, endured long hours of conscious pain and suffering, and ultimately died as a result of Officer Shearin's actions. The damages awarded to punish Officer Shearin for his actions are thus reasonable under the circumstances and do not in this instance 'shock the conscience' of the court. Accordingly, the district court's grant of remittitur as to the punitive damage award is REVERSED.

**OFFICIAL CAPACITY SUIT AGAINST SHEARIN**

Appellant next contends that the magistrate judge erred by dismissing the official capacity claims against Officer Shearin. In particular, Appellant asserts under the Tennessee Governmental Tort Liability Act, T.C.A. § 29-20-101, an action against Shelby County can be maintained only for actions of a deputy in his official capacity as an employee, thus the decision to essentially dismiss all pendent state law

---

*York Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978). For liability to attach, there must be execution of a government's policy or custom which results in a constitutional tort. *Id.* Such a requirement ensures that a county is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the county. *Id.* The "policy" requirement is not meant to distinguish isolated incidents from general rules of conduct promulgated by city officials. Instead, the "policy" requirement is meant to distinguish those injuries for which county is responsible under § 1983, from those injuries for which the county should not be held accountable. *Meyers v. City of Cincinnati*, 14 F.3d 1115 (6th Cir. 1994) (citing *Monell*, 436 U.S. at 694, 98 S.Ct. at 2038).

"A court's task is to identify those who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the violation at issue." *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 784-85, 117 S. Ct. 1734, 1736 (1997) (citing *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737, 109 S. Ct. 2702, 2723-2724 (1989)). We bear in mind however that "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Board of County Comm'r of Bryan County, Okl., v. Brown*, 520 U.S. 397, 404, 116 S. Ct. 1382, 1388 (1997) (citing *Monell* 436 U.S. at 690-691, 98 S.Ct., at 2035-2036; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168, 90 S.Ct. 1598, 1613-1614(1970)); *Doe v. Claiborne County Tenn.*, 103 F.3d 495, 507-08 (6th Cir.1996) ("A custom ...must be so permanent and well settled as to constitute a custom or usage with the force of law") (quotation marks omitted).

In addition, a plaintiff must demonstrate that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that

the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of County Comm'r of Bryan County, Okl.,* 520 U.S. at 405, 116 S. Ct. at 1389.

We have carefully reviewed the transcript provided and made all reasonable inferences in favor of the Appellant. No one disputes that the written policy for J-Pod was that only one cell door could be opened at a time. The only evidence Appellant relies upon to support his claim is testimony from Ms. Smith-Arnold that on more than one occasion the policy regarding cell doors was not followed. This testimony alone however does not establish that the practice was so widespread as to have the force of law. Testimony from Inmate Campbell buttresses this conclusion. Inmate Campbell first testified that all the cell doors were never opened at one time. He also testified that on March 21 he heard Officer Shearin tell Jerry Ellis that he would open his cell door and "let him in[to]" the decedent's cell. This testimony suggests that Officer Shearin purposely broke the established policy to enable Jerry Ellis to get into Mr. Gregory's cell. While any rational trier of fact could find that the written policy was not followed on more than one occasion, Appellant has wholly failed to point to evidence in the record suggesting that this lapse of compliance with the written policy was so well settled as to constitute a custom thereby attaching liability to Shelby County. *Doe*, 103 F.3d at 507-08.

Appellant contends that the County's responsibility is embodied in its toleration of the custom of leaving cell doors randomly open. Appellant's argument that the custom was tolerated suggests that the County must have either actual or constructive notice of that alleged custom. There is no evidence, however, that the County or any authorized decisionmaker was on notice that two or more cell doors were open at the same time. In fact, Officer William Cash

award. We find nothing in the record to suggest that the jury's award was beyond the range of supportable proof or motivated by passion or prejudice. We note too, in light of all of the evidence, the compensatory damage award does not 'shock the conscience' of this court.

Having determined that the award of compensatory damages is not beyond the range of supportable proof, is not motivated by passion or prejudice and is not so excessive as to 'shock the conscience', the award must stand. *Bickel,* 96 F.3d at156. Accordingly, the trial court's grant of remittitur on the issue of compensatory damages is REVERSED.

We turn next to the award of punitive damages, cognizant of the fact that before this court is the remitted punitive damage award as against Officer Shearin. On this issue, the magistrate judge determined that the award of $2.2 million against Officer Shearin, 'shocks the judicial conscience'. Indeed, an excessive award of punitive damages can violate the Fourteenth Amendment. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589 (1996). The Supreme Court set forth three factors to be considered in reviewing an allegedly excessive jury award: (1) courts are to examine "the degree of reprehensibility" of the conduct; (2) courts should look at "the disparity between the harm or potential harm suffered by [the plaintiff] and his punitive damage award."; and, (3) reviewing courts must examine "the difference between [the punitive damages] and the civil penalties authorized or imposed in comparable cases." *Id*. at 575.

The trial court in this instance instructed the jury that an award of punitive damages was permitted if plaintiff proved that the defendant's conduct was "wanton and reckless, not merely unreasonable." By returning an award of punitive damages, the jury had to have found "wonton and reckless" conduct by Officer Shearin, suggesting that under the "degree of reprehensibility" factor a substantial punitive damage award is permissible. Moreover, the record itself speaks volumes of the reprehensible nature of Officer Shearin's

suffering. Damage awards for such injuries are appropriate as the magistrate judge pointed out in his opinion. *See Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 305-07, 106 S. Ct. 2537, 2542-43 (1986) (damages may include such injuries as impairment to reputation, personal humiliation, and mental anguish and suffering).

The magistrate judge's determination that the award was clearly excessive and that there was no evidence presented at trial from which the jury reasonably could have arrived at an award of $778,000 seems to be in error. We believe the award was not clearly excessive and that ample evidence was presented to establish an award of this amount.

The evidence adduced at trial shows that Gerald Gregory suffered severe injuries as a result of a brutal beating by Jerry Ellis. Although even minor injuries to the decedent could have caused him to bleed due to a blood-clotting disorder, the evidence establishes the injuries were far more than minor. In addition to the evidence cited by the magistrate judge, Gerald Gregory suffered from an intercranial hemorrhage and a decelerative head injury. His eyes were swollen and his lips were 'busted' and there was dried blood on his face. Evidence adduced at trial shows that after the beating by Inmate Ellis, Mr. Gregory lay in his cell for more than ten hours before Officer Hardy discovered him. And, Mr. Gregory was conscious not only when Officer Hardy discovered him, but also during the first physical examination at the medical center. Indeed, the evidence shows that Mr. Gregory endured an extended period of conscious pain and suffering before receiving medical treatment and before he succumbed to the vicious beating. Additionally, there is evidence that the jury could believe that Mr. Gregory was raped during this brutal and fatal assault.

It is difficult to dispute that the compensatory damage award is large; it is not however excessive. In light of the egregious circumstances illustrated above, we believe sufficient proof was presented at trial for the jury to make this

investigated Mr. Gregory's death and found no violation of the policy or procedure by the Sheriff's office.[4]

Appellant further contends Shelby County's liability should have gone to the jury because his pendent state law claim under Tennessee Code Annotated § 8-8-302 allows for liability under a theory of *respondeat superior*.

Rule 16(e) of the Federal Rules of Civil Procedure provides: "[a]fter any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial conference shall be modified only to prevent manifest injustice." Fed R. Civ. P. 16(e). This Circuit has held that a party's failure to advance a theory of recovery in a pretrial statement constitutes waiver of that theory. *Olsen v. American Steamship Co.,* 176 F.3d 891 (6th Cir. 1999) (citing *McKinney v. Galvin*, 701 F.2d 584 n.3 (6th Cir. 1983).

Here, all parties signed a joint pretrial order stating that this was a § 1983 action, and no mention of the specific Tennessee code section is made in the pretrial order. Appellant raised this issue in his motion for new trial. In the order denying the motion, the magistrate judge, acknowledged that the § 8-8-303 was mentioned in the Complaint, but determined it was not included in the pretrial order and plaintiff did not seek to modify the pretrial order to include such a claim. As plaintiff failed to ensure that the claim under § 8-8-303 was part of the pretrial order, we believe the district court was entitled to conclude that plaintiff waived that theory and was pursuing relief only under § 1983 and the state wrongful death claim.

---

[4]At the time of trial, Officer Cash had been assigned to internal affairs in the Sheriff's Office for approximately three years.

## REMITTITUR

Following the jury verdict Defendants Shearin and Ellis sought a new trial or in the alternative, remittitur on the grounds that the compensatory damages awarded to plaintiff were excessive and not supported by the facts. Defendant Shearin claims also that the punitive damage award of $2.2 million assessed against him was excessive. The trial court granted the request for remittitur as to both Defendants on the compensatory damages and granted the request as to Officer Shearin on the punitive damages.

In the absence of undue passion and prejudice on the part of the jury, we review for abuse of discretion the district court's decision on the issue of remittitur. *Skalka v. Fernald Envtl. Restoration Management Corp.,* 178 F.3d 414, 424 (6th Cir. 1999) (citing *Roush v. KFC Nat'l Mngmnt. Co.*, 10 F.3d 392, 397 (6th Cir.1993)).

This Circuit has determined a jury verdict should not be remitted by a court "unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." *Jackson v. City of Cookeville*, 31 F.3d 1354, 1358 (6th Cir. 1994) (citing *Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391, 1395 (6th Cir.1990) *See also In re Lewis*, 845 F.2d 624, 635 (6th Cir.1988) (quoting *Manning v. Altec, Inc.*, 488 F.2d 127, 133 (6th Cir.1973)). As we have held, an award must stand unless it is (1) beyond the range supportable by proof; or (2) so excessive as to shock the conscience; or (3) the result of a mistake. *Bickel v. Korean Air Linnes Co., Ltd.*, 96 F.3d 151, 156 (6th Cir. 1996) (citing *Leila Hosp. & Health Ctr. v. Xonics Medical Sys.*, 948 F.2d 271, 278 (6th Cir.1991)).

A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice; or

is so excessive or inadequate as to shock the judicial conscience of the court. *Farber*, 917 F.2d 1391.

We begin with the magistrate judge's decision to grant the request for remittitur on the ward of compensatory damages. On this issue, the magistrate judge made to following determination:

The testimony adduced at trial established that Gerald Gregory suffered an abrasion over his left eye, a head injury resulting in internal bleeding, and scrapes on his arm and elbow. Although it was alleged that Ellis raped the decedent, the physician who performed the autopsy testified that Gregory could have been raped but there was no physical evidence thereof. Mickey Gregory testified he visited his brother in the intensive care unit of the University of Tennessee Medical Center following the alleged beating. He was attached to numerous tubes, appeared to be unconscious, and suffered from facial swelling. Plaintiff further related that 'blood was mixed with [Gregory's] tears.' He lived for three days before succumbing to his injuries. Plaintiff presented no evidence at trial concerning medical or funeral expenses. Viewing the evidence presented in the light most favorable to plaintiff, the court finds the jury's award of $778,000 in compensatory damages clearly excessive. There was simply no evidence presented at trial from which the jury could have reasonably arrived at such a large sum. As it appears to the court that the verdict was motivated by passion or prejudice rather than a reasoned assessment of the evidence of injury, it will not be permitted to stand...The compensatory damages to be awarded to plaintiff shall be reduced to $150,000.

The magistrate judge properly determined that no evidence was presented concerning medical and funeral expenses for Mr. Gregory, and economic loss was not at issue. We conclude, as we must, that the award of damages therefore must have been based upon Mr. Gregory's conscious pain and