**NOT RECOMMENDED FOR PUBLICATION**

File Name: 21a0320n.06

Case No. 20-6115

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jul 07, 2021

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| VIVIAN JANE UMFRESS, | ) | |
|     Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| CITY OF MEMPHIS, TENNESSEE, | ) | |
|     Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

BEFORE: COLE, BUSH, and NALBANDIAN, Circuit Judges.

JOHN K. BUSH, Circuit Judge. "When a party comes to us with nine grounds for reversing the district court, that usually means there are none." *Fifth Third Mortg. Co. v. Chi. Title Ins. Co.*, 692 F.3d 507, 509 (6th Cir. 2012). Here, the City of Memphis offers eleven. It forfeited some, and the rest lack merit. We affirm.

I.

Vivian Umfress began to work for the City in 1982. Thirty-three years later, in 2015, she believed that the City was discriminating against her because of her age, so she filed a complaint with the Equal Employment Opportunity Commission. A few months after that, the City restructured its finance division, eliminating two positions. One was Umfress's.

At some point after the City eliminated Umfress's job, an unknown city employee placed Umfress's name in a security binder that the City maintained to keep track of people who needed

an escort to enter city hall. Then, a year later, that security binder became a subject of interest to local journalists. They filed public records requests, so Memphis produced it. To explain the binder, the City published a press release that read:

> City Hall is open to the public, but peace and safety for all citizens and city employees in this building is important. Like all government buildings, there are security measures in place at City Hall. People who require an escort may include disgruntled employees who have been fired, people named on an authorization of agency, and individuals who are subject to orders of protection. It is the professional assessment of the Memphis Police Department's Homeland Security Bureau that individuals on the list pose a potential security risk. It's important to note that these individuals have not been banned from City Hall. They simply require an escort. The Memphis Police Department maintains this list, and is responsible for providing security at City Hall.

The press release did not specifically refer to Umfress or any other individual, but she testified that because of the media coverage, an online search for her name would bring up the press release and her inclusion in the security binder.

Umfress sued, alleging retaliation under the Age Discrimination in Employment Act and a constitutional "stigma-plus" violation. Throughout the proceedings below, Memphis repeatedly disavowed any argument that Umfress's performance was a factor in her termination. Instead, it maintained that its sole defense against the retaliation claim was that Umfress lost her job as part of a restructuring. The jury did not believe that explanation, so it awarded Umfress $341,981.49 in damages for her ADEA claim. It also found for Umfress on the stigma-plus claim and awarded $750,000 in damages.

## II.

Before proceeding to the merits, we must assure ourselves of our jurisdiction. *See Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950 (2019). Memphis argues that Umfress does not have standing to bring her stigma-plus claim. It reasons that because a stigma-plus claim arises from the denial of a plaintiff's request for an opportunity to clear her name, and Umfress

never requested such an opportunity, she never suffered an injury capable of conferring standing. That argument conflates the injury-in-fact requirement with a plaintiff's need for a cause of action.

Injury in fact requires only that a plaintiff suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminenet, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992)). Intangible harms, like harm to reputation, satisfy that standard if they have "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 1549. Harm to reputation has been a basis for a defamation lawsuit under English law since the thirteenth century. *See* Van Vechten Veeder, *The History and Theory of the Law of Defamation*, 3 Colum. L. Rev. 546, 551 (1903). Umfress therefore has standing for her stigma-plus claim.

Her failure to request a name-clearing hearing means that she never had a cause of action for her stigma-plus claim. *See Quinn v. Shirey*, 293 F.3d 315, 321 (6th Cir. 2002). But "the absence of a cause of action is a *merits* issue that does not implicate the court's constitutional power to decide the case." *Keen v. Helson*, 930 F.3d 799, 802 (6th Cir. 2019). As a merits issue, the City had to raise the argument before or during trial to preserve it. Fed. R. Civ. Pro. 12(h)(2); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 507 (2006). It did not.

III.

A. STIGMA-PLUS

The government cannot stigmatize an employee in the course of firing her without offering her the opportunity to clear her name. *Hart v. Hillsdale County*, 973 F.3d 627, 644 (6th Cir. 2020). In this context, the loss of employment is the "plus." *Quinn*, 293 F.3d at 319–20. To be actionable under such a theory, the government's statements must be: 1) made in conjunction with the

plaintiff's termination; 2) alleging more than merely improper or inadequate performance, incompetence, neglect of duty, or malfeasance; 3) public; 4) false; and 5) voluntarily disseminated. *Id.* If, after that, a plaintiff is denied the opportunity to clear her name, she suffers a violation of her procedural due process rights. *Id.* But because the injury that deprivation of procedural due process causes is to a plaintiff's interest in her reputation, that reputational injury is the basis for damages. *See Hart*, 973 F.3d at 644–45 (calling a stigma-plus claim a "defamation claim").

Memphis argues that it is entitled to judgment as a matter of law on this claim, a new trial, or remittitur of the $750,000 damages award. It is incorrect.

### 1. Judgment as a Matter of Law

Memphis believes that it is entitled to judgment as a matter of law for four reasons: Umfress did not suffer reputational harm; it did not stigmatize Umfress in conjunction with her termination; it did not stigmatize her voluntarily; and it did not stigmatize her pursuant to a policy or custom. It forfeited the second argument, and the other three have no merit. We review the denial of a Rule 50(b) motion for judgment as a matter of law de novo, but we draw all reasonable inferences in Umfress's favor and ignore evidence favorable to the City that the jury was not "required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

### a. Preservation

Federal Rule of Civil Procedure 50 governs motions for judgment as a matter of law. Rule 50(a) requires the movant (here, Memphis) to "specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. Pro. 50(a)(2). If the district court denies the 50(a) motion and the jury rules against the movant, the movant can make a renewed motion for judgment as a matter of law. To make an argument in the renewed motion, the movant had to raise the original argument in a "sufficiently substantial way" in its original motion. *CFE Racing*

*Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 583 (6th Cir. 2015). That requirement ensures that the movant provide notice to the court and the opposing counsel of deficiencies in the opposition's case. *See Kusens v. Pascal Co., Inc.*, 448 F.3d 349, 361 (6th Cir. 2006). So the key question is whether the basic legal theory that a party relies on in the renewed motion is discernible from the original motion. *See Ford v. County of Grand Traverse*, 535 F.3d 483, 493 (6th Cir. 2008).

Here, the City's Rule 50(a) motion contained two discernible arguments on the stigma-plus claim. It first argued that Umfress had not shown any harm from the City's statement about her. Then the City argued that it did not voluntarily defame Umfress because it had a statutory obligation to release the security binder. In responding, Umfress's attorney began to go through all of the parts of a stigma-plus claim. But the district court cut him off and instructed him to respond only to the harm and voluntariness arguments because "those are the two issues I think [the City] points to." The court's instruction makes clear that the City's 50(a) motion put the court and Umfress on notice of only the harm and voluntariness arguments, so those are the only arguments that Memphis preserved. But because Umfress did not raise the City's forfeiture of its custom-or-policy argument either before us or in the district court, she forfeited the forfeiture argument. *See Greer v. United States*, 938 F.3d 766, 770 (6th Cir. 2019).

The City says that it preserved its "in conjunction with" argument because, in making its voluntariness argument, it cited a page from *Chilingarian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989) that referenced the need for a temporal connection. That is patently insufficient to preserve the argument. *See Ford*, 535 F.3d at 493 (recognizing forfeiture because "the trial transcript contains no mention of this legal argument whatsoever").

b. Merits

*Harm.* The City argues that the district court should have granted it judgment as a matter of law because, in its view, Umfress presented no evidence of reputational harm. But reputational harm is not an element of a stigma-plus claim. *See Quinn*, 293 F.3d at 320. Denial of a name-clearing hearing is the violation of procedural due process that creates a stigma-plus cause of action—the reputational harm is just the injury that deprivation causes. *Id.* at 321. So this argument fails.

*Voluntariness.* For a government to be liable for a stigmatizing statement, "the public dissemination must have been voluntary." *Crosby v. Univ. of Ky.*, 863 F.3d 545, 555 (6th Cir. 2017). Memphis argues that because it released the security binder pursuant to a compulsory public records request, and because the press release itself did not directly reference Umfress, it did not voluntarily stigmatize her. But the press release, which necessarily implied that Umfress posed a security risk, was the stigmatizing statement, and the City published it voluntarily. The fact that the release needed an additional referent—the security binder—for its defamatory meaning to reach Umfress does not change its stigmatizing effect on her.

In concluding that the press release refers to Umfress, we look to the "of and concerning" requirement in defamation law. Defamatory statements do not need to name their subject so long as the plaintiff can show that the statement can be "reasonably understood to be about" her. *Nat'l Coll. of Ky., Inc. v. WAVE Holdings, LLC*, 536 S.W.3d 218, 223 (Ky. Ct. App. 2017); *see also* Restatement (Second) of Torts §§ 564 & 564A (Am. L. Inst. 1977). A statement that "contains matters of description or other references," satisfies this standard. *Ball v. Taylor*, 416 F.3d 915, 917 (8th Cir. 2005) (per curiam) (applying Iowa law and the Restatement). Here, the press

release's reference to the security binder is a sufficient referent for the press release to refer to Umfress.

*Custom, Policy, or Policymaker.*   To hold the City liable under § 1983, Umfress had to show that Memphis's policies or customs caused her harm, or that an official with final decision-making authority took or directed the harmful action.  *Winkler v. Madison County*, 893 F.3d 877, 901 (6th Cir. 2018).  Memphis's issuance of the press release meets that standard.  It was a formal press release from the City's press office.  And the City's Chief Legal Officer and Police Director directed the press office to draft the press release and had final sign-off on what it said.  Both are policymaking officials with final decision-making authority.  *See Moldowan v. City of Warren*, 578 F.3d 351, 394 (6th Cir. 2009).  So the district court properly denied judgment as a matter of law.

2.  Verdict Inconsistency

Memphis next argues that the district court should have granted it a new trial because of what it sees as inconsistency in the jury's verdict form.  The verdict form required the jury to answer a series of questions.  Question six read: "Do you find that when the City of Memphis published the false and stigmatizing statements, it damaged [Umfress's] standing and relationships in her community?"  Question seven read: "Do you find that when the City of Memphis published the false and stigmatizing statements, it prevented or made more difficult Ms. Umfress's ability to gain other employment?"  The jury answered no to both.  Then it awarded Umfress $750,000 in damages for reputational harm.  The City did not object to the verdict.  Now it argues that the verdict was so inconsistent that the district court had to—on its own initiative—send the jury back to reconsider or order a new trial.

Federal Rule of Civil Procedure 49(b)(4) says that when a district court uses a general verdict with special interrogatories, and "the answers are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court must direct the jury to further consider its answers and verdict, or must order a new trial." As Memphis notes, some circuits have read that text to impose a standalone obligation on district courts to address inconsistent verdicts, obviating the need for a party to object. *See Schaafsma v. Morin Vt. Corp.*, 802 F.2d 629, 634–35 (2d Cir. 1986); *Brunner v. Mar. Overseas Corp.*, 779 F.2d 296, 297–98 (5th Cir. 1986). But we are not among that group. Instead, we apply the same forfeiture rule for a general verdict with special interrogatories that we do for a special verdict: a party must object before the district court releases the jury or forever hold its peace. *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 538 (6th Cir. 2014) (general verdict with special interrogatories); *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 619 (6th Cir. 2007) (special verdict).[1] Memphis never objected, so it forfeited the argument.[2]

### 3. Remittitur

Finally, the City argues that, if nothing else, the district court abused its discretion in declining to reduce the jury's $750,000 damages award.

---

[1] Because our rule is the same for both, we need not resolve the parties' disagreement over what type of verdict the district court used here.

[2] It is far from clear that the verdict is irreconcilable. Questions six and seven were phrased in the past tense, while the damages inquiry was framed more generally. The jury could reasonably have found both that Umfress had yet to suffer significant harm and that a prospect of spending the rest of her life with the City's statement about her publicly available caused immense harm.

Tense aside, other portions of the jury verdict seem to explain and justify the award. The verdict directed the jury to enter compensatory damages so long as it answered every question about the § 1983 claim—except questions 6 or 7—affirmatively. That direction makes sense given that a different question asked the jury whether "the City of Memphis published the false or stigmatizing statements, causing an injury to Ms. Umfress' reputation, good name, honor, or integrity by making a false statement about her." The jury determined that the City had so injured Umfress. On its face, that finding seems to be enough to justify Umfress's contested awards for "Impairment to Reputation" and "Damage to Name."

This argument faces a preliminary question whether, as Umfress argues, the City also forfeited its remittitur argument by failing to challenge the jury's verdict. In *Nolfi v. Ohio Ky. Oil Corp.*, we affirmed a district court's decision not to amend a judgment on that ground. 675 F.3d 538, 552 (6th Cir. 2012). We explained that "[t]he district court neither relied on erroneous facts nor improperly applied the law in question, which here was to deny the Rule 59(e) motion because of the Rule 49(b) [forfeiture] rule." *Id.* Insofar as the City is arguing that the jury's verdict provides a basis for remittitur, Umfress is correct that it forfeited that argument.

But Memphis forfeited only the argument based on jury inconsistency. It separately argues that insufficient proof supported the damages amount, and that argument is properly before us. *See Heil Co. v. Evanston Ins. Co.*, 690 F.3d 722, 727–28 (6th Cir. 2012) *abrogated on other grounds by Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 357–60 (6th Cir. 2018). We review the district court's decision to reject that argument for an abuse of discretion. *Gregory v. Shelby County*, 220 F.3d 433, 443 (6th Cir. 2000). And the district court could only have reduced the damages award if, viewing all evidence in Umfress's favor, it was "convinced that the verdict is clearly excessive, resulted from passion, bias, or prejudice; or is so excessive or inadequate as to shock the judicial conscience." *Id.*

We have never reviewed a damages award in a stigma-plus case, but defamation law provides guidance for how to assess a jury's valuation of a person's reputation. Determining the value of lost reputation has long been "left to the enlightened conscience of the jury." *Straw v. Chase Revel, Inc.*, 813 F.2d 356, 360 (11th Cir. 1987) (applying Georgia law); *see also* Restatement (Second) of Torts § 621 cmt. a (Am. L. Inst. 1977) ("This presumption of general damage to reputation from a defamatory publication that is actionable per se affords little control by the court over the jury in assessing the amount of damages."). That special solicitude for the

jury's discretion in determining the value of harm to reputation, combined with the high standard for remittitur, makes for a heavy lift.

Memphis cannot clear that bar. Umfress testified that "[a]ny of the employees, other employees I worked with know I'm on the list," and that some of her friends knew she was on the list as well. She said that she became "much more cautious about trying to apply for jobs" because any online search for her would turn up her presence on the security list and the City's statement that her presence there meant that the Memphis Police Department's Homeland Security Bureau had deemed her a security risk. And the City's press release "made [her] want to just stay in the house and stay holed up" for fear that she would meet someone who associated her with the press release. She also repeatedly compared being on the list to being called a terrorist, which, she explained on cross, was how the media had covered the list. Beyond Umfress's testimony, the two other people the City placed on the list testified to the problems that being on the list caused them at work. Finally, Umfress introduced evidence that her life expectancy at the time of trial was twenty more years.

Viewing that evidence in Umfress's favor, the $750,000 award is not so excessive as to "shock the judicial conscience." *See Gregory*, 220 F.3d at 443. Umfress established that although only a few friends knew she was on the list at that point, she would have to live for twenty years fearing that anyone who Googled her name—be it a new acquaintance or prospective employer— would learn that the Memphis Homeland Security Bureau deemed her a security risk. And she put on witnesses who testified about how being on the list had harmed them. A jury of her peers valued that harm at $750,000, and we will not disturb its determination.

B. ADEA RETALIATION

Memphis challenges two of the district court's evidentiary rulings and its ruling that the City did not timely raise its after-acquired-evidence defense. We review both types of rulings for an abuse of discretion. *Lyngaas v. Curaden AG*, 992 F.3d 412, 430 (6th Cir. 2021) (evidentiary); *Rogers v. IRS*, 822 F.3d 854, 856 (6th Cir. 2016) (defense preservation). Umfress yet again argues that the City failed to preserve its challenges. The City did preserve its challenges, but none has merit.

1. Evidence of Deficient Job Performance

At trial, Memphis's sole explanation for Umfress's termination was that it had abolished her job as part of a restructuring. It repeatedly disavowed any argument that it fired Umfress because of her performance.[3] Yet it still sought to introduce evidence that she had, among other failings, repeatedly been found with undeposited checks and cash in her office. Before trial, the district court ruled that neither party could introduce evidence about Umfress's performance because her performance was immaterial to the way Memphis planned to present its case. It enforced that ruling during trial when, for example, Umfress's supervisor began to testify that Umfress failed to perform essential functions of her job. Then, after the supervisor again alluded to Umfress's poor performance, the district court instructed the jury that "it is not an issue in this case that Ms. Umfress did not perform her job competently. So I'm instructing you to not take Ms. Ford's testimony or anything we've talked about in this case as implying that Ms. Umfress did not

---

[3] While this decision seems inexplicable, it makes some sense in context. Umfress is a civil service employee. So if the City had terminated her for poor performance, she would have been able to challenge that decision in front of Memphis's Civil Service Commission. As the City acknowledged in a pretrial hearing, its position that it did not terminate Umfress because of her job performance enabled it to argue that Umfress had no claim before the Commission.

perform her job competently. That's not an issue in this case." Memphis challenges both the exclusion of its evidence and the district court's instruction.

### a. Preservation

Umfress argues that Federal Rule of Evidence 103(a) required the City to make an offer of proof—essentially, a showing of what it would introduce if allowed to do so—to preserve this argument. But the offer-of-proof requirement applies only if the substance was not "apparent from the context" and if the court has not definitively ruled on the issue. Fed. R. Evid. 103(a)(2), (b). Here, the district court had made very clear that the parties could not discuss issues of performance, and when the City's attorney argued that Umfress had opened the door to performance issues, she specifically said that she wanted to question Umfress about money handling, which referred to the City's finding undeposited checks and cash in her office. The district court was well aware of Umfress's problems with money handling from the various motions it had dealt with. Because the "substance and significance of the excluded evidence" was obvious, the City did not need to make an offer of proof to preserve this challenge. *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998).

### b. Merits

Given the City's repeated statements that Umfress's termination was not performance-based, it could only introduce performance evidence if Umfress opened the door to it by offering evidence that she had performed well. *See In re Air Crash Disaster*, 86 F.3d 498, 530 (6th Cir. 1996). She did not. She testified to the work she did, without offering an opinion on how well she did it, and to the items on her resume. She compared the job descriptions for a position she had held to the positions that the City created. And she testified that her certified municipal financial officer certification designates her as "competent in handling municipal finances and protecting public money" without claiming to live up to that designation. Because none of that

testimony spoke to her performance, the district court did not abuse its discretion in excluding the City's performance evidence.

Memphis's argument that the district court's jury instruction improperly indicated that Umfress was competent is equally meritless. The instruction accurately reminded the jury that the City had chosen not to put Umfress's performance at issue, nothing more.

### 2. Evidence on the Reduction-in-Force Policy

One of Umfress's central arguments at trial was that the jury could find retaliation because the City did not apply its reduction-in-force policy to the abolishment of her job. The Policy normally applies to restructurings, and it gives more senior employees the option to take a different job with the City—even at the expense of bumping a less senior employee—rather than lose their job. So if the City had applied the Policy, Umfress would not have lost her job. Before trial, Umfress moved to exclude evidence that the Policy did not apply to her termination. At argument on the motion, the district court specifically asked the City whether it had evidence of other job abolishments that had not applied the Policy, and the City's attorney replied "as I stand here that I don't know . . . but I'm sure that [a specific witness] knows the answer to, and it may be in her deposition somewhere that she's – it may be in her civil service hearing testimony, I don't know. I'm sorry." In the City's supplemental brief, it yet again failed to offer the requested example. The district court then held that by its plain terms, the Policy applied to Umfress, so the City could not seek to introduce evidence of ambiguity as to the Policy's applicability.

When Memphis sought clarification at trial, the district court explained that the City's witnesses could say that they did not believe the Policy applied, but that they could not offer

specific instances where the City had not applied the policy. At that point, on the third day of trial, the City finally pointed to one other instance where it had not applied the Policy.

### a. Preservation

Umfress makes the same offer-of-proof argument for this contention, and she is equally incorrect here. The district court definitively ruled on the record that the City could not offer evidence that the Policy did not apply. The City then re-raised the issue at trial and pointed to the exact evidence it would introduce—testimony that the City had abolished a driver-inspection station without applying the RIF policy. That is more than enough to preserve the argument. *See Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 791–92 (6th Cir. 2002).

### b. Merits

The City argues that the district court abused its discretion by granting Umfress's motion to exclude evidence of other times it did not apply the Policy. But the district court could only resolve the pretrial motion based on the evidence it had before it. Even after the district court repeatedly asked for evidence of other times when the City had declined to apply the policy to job abolishments, the City failed to provide such evidence. The evidence before the district court, then, was a policy that on its face obviously applied to Umfress (which the City does not challenge) and no proof that the City had ever declined to apply it to job abolishments. Granting that motion was not an abuse of discretion.

### 3. After-Acquired Evidence Defense

In its answer to Umfress's original complaint, Memphis raised the after-acquired-evidence defense, which would have cut off its liability under the ADEA at the time it discovered evidence that would have led to Umfress's termination (here, undeposited checks and cash that the City says it found in her office after her termination). But when Umfress filed an amended complaint, the

City never filed a new answer. So, after discovery ended, Umfress filed a motion to exclude argument as to an after-acquired-evidence defense. The district court held that the City had failed to preserve the defense because a "late Answer that appears to take Plaintiff's Motion *in Limine* as a cue to raise an affirmative defense is, while bold, wholly insufficient."

### a. Preservation

Umfress offers two preservation arguments. First, she again makes a meritless offer-of-proof argument. The district court's ruling that the City had forfeited this argument made an offer of proof unnecessary. *See Conwood*, 290 F.3d at 791–92. Second, she argues that Memphis needed to raise this argument in its Rule 59(a) motion to preserve it for appeal. But parties do not need to make a Rule 59 motion to preserve an issue for an appeal. *Howe v. City of Akron*, 801 F.3d 718, 750 (6th Cir. 2015).

### b. Merits

The City relies on *Moore, Owen, Thomas & Co. v. Coffey* for the proposition that the failure to properly plead an affirmative defense does not forfeit that defense so long as the other party had sufficient notice. 992 F.2d 1439, 1445 (6th Cir. 1993). But that rule does not apply when the delayed pleading would prejudice the plaintiff. *See Rogers*, 822 F.3d at 856. We have consistently explained that raising an affirmative defense after discovery has closed prejudices the plaintiff's ability to respond. *E.g.*, *Henricks v. Pickaway Corr. Inst.*, 782 F.3d 744, 751 (6th Cir. 2015). Here, as Umfress argues, raising the defense at that point limited her ability to seek evidence to rebut it. Thus, the district court did not abuse its discretion in holding that the City forfeited the defense.

We affirm.