Robert DUNN, Plaintiff,

v.

**VILLAGE OF PUT–IN–BAY,**
**et al., Defendants.**

**No. 3:02 CV 7252.**

United States District Court,
N.D. Ohio,
Western Division.

Nov. 4, 2003.

Amy S. Glesius, Law Office of Christopher P. Thorman, Barbara Kaye Besser, Elfvin & Besser, Bruce B. Elfvin, Elfvin & Besser, Cleveland, OH, Frank J. Groh–Wargo, Powers & Groh–Wargo, Berea, OH, for Plaintiff.

James A. Climer, Mazanec, Raskin & Ryder, Robert F. Cathcart, IV, Mazanec, Raskin & Ryder, Cleveland, OH, for Defendants.

## ORDER

CARR, District Judge.

This is a § 1983 excessive force case in which the plaintiff, Robert Dunn, alleges that the defendants, police officers David Stanco, Brian Sterrick, and James Gardener, Chief of Police James Lang, and the Village and Township of Put–In–Bay, Ohio, violated his Fourth, Fifth, and Fourteenth Amendment rights. Plaintiff has also alleged a pendant state law claim for assault and battery. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Pending is defendants' motion for summary judgment. For the following reasons, defendants' motion shall be denied in part and granted in part.

## BACKGROUND

At approximately 1:00 or 2:00 a.m. on Sunday, May 20, 2001, plaintiff Robert Dunn was in Put–In–Bay, Ohio, lying in a grassy field down the road from one of the island's bars. Plaintiff was arrested by Put–In–Bay police officers, pepper sprayed, and taken to the Put–In–Bay police station, from which he was released the next morning. Plaintiff has admitted that he was drinking on Saturday evening/Sunday night, though it is not clear how much he had imbibed.

Plaintiff claims that he was simply walking in the grassy, wet field after leaving a bar, when he tripped and fell face down in the grass. At the same time, defendant police officers were searching the area for suspects who had overturned a nearby vending machine. Plaintiff claims that "[a]fter seeing Plaintiff lying on the ground and believing him to be hiding, the first officer slammed his knee into Plaintiff's neck while another officer straddled Plaintiff and placed handcuffs on him." (Doc. 34, at 11). Plaintiff further alleges that, after he had been handcuffed, a third

officer sprayed pepper spray in his face from very close range. Plaintiff claims that he did not know who had jumped on him and that he never heard the officers identify themselves as police officers.

The officers then took plaintiff to the Put–In–Bay police station. Plaintiff claims that the officers never informed him of why he had been arrested and detained. At the police station, plaintiff was treated by local emergency medical services personnel for pepper spray exposure and was released later that morning. Plaintiff later complained of a "stabbing pain" in his neck as a result of the arrest. (Doc. 34, at 12).

Plaintiff was charged with criminal damaging in connection with the overturned vending machine and with underage consumption of alcohol. The criminal damaging charge was later dropped, and plaintiff plead no contest to the underage consumption charge.

Defendants allege that the Put–In–Bay Police Department received a call reporting vandalism at a campground sometime around 2:00 a.m. At the scene, the taxi drivers told police that they had seen "some young men turning over a soda machine." (Doc. 24, at 2). The witnesses also apparently saw the men run into a nearby field. Defendants claim that, while investigating the vandalism, defendant Officer Stanco saw a " 'path' through the wet, tall grass of the field, leading to the woods. Officer Stanco, with his partner, Officer Sterrick, followed the path and soon came upon a man crouching down in the grass . . . ." (Id.). The defendant officers claim that this young man, plaintiff Robert Dunn, matched the description of one of the suspects given to them by the taxi drivers.

Defendants allege that Officer Stanco yelled at plaintiff to remain on the ground and to put his hands behind his back. The officers claim that plaintiff did not comply;

instead he got up and clenched his fists at the officers. The officers then claim that they told plaintiff to get on the ground or risk being pepper sprayed. When plaintiff again refused to comply, according to the officers, they sprayed him with "a one second burst of pepper-spray." (Doc. 24, at 4). At this point, the officers allege that plaintiff still did not get on the ground, and Officer Stanco "took him down to the ground using an arm-bar takedown." (*Id.*).

Defendants allege that, once they had taken plaintiff to the police station, he refused treatment for his pepper spray exposure for some time, and would not let the officers come near him to examine his eyes. After several hours, defendants claim that plaintiff finally acquiesced to medical treatment, and emergency medical services personnel were called.

Defendants concede that Officers Stanco and Sterrick were involved with plaintiff's arrest, but deny that Officer Gardener was involved. Plaintiff claims that a third officer was involved in his arrest, but it is not clear who, if anyone, was directly involved in addition to Officers Stanco and Sterrick. Defendants claim that Officer Gardener and another police officer, Officer Daniel Yost, were present at the scene but did not participate in the arrest.

Plaintiff alleges that Put–In–Bay Chief of Police James Lang was aware that Put–In–Bay police officers often used excessive force when making arrests, but failed to do anything to address such conduct. He also claims that he had a conversation with Chief Lang some time after the arrest, during which the chief allegedly threatened to sue plaintiff if he made a formal complaint about the police officers' treatment of him.

Plaintiff also alleges that the Village and Township of Put–In–Bay "failed to train its police officers to perform their duties in conformity with an individual's constitutional rights," which plaintiff alleges constitutes "deliberate indifference to the constitutional rights of those with whom the police officers come into contact." (Doc. 1, at 6).

Defendants' motion for summary judgment alleges that each of the defendants is entitled to qualified immunity from plaintiff's § 1983 claims and that summary judgment is appropriate as to plaintiff's pendant state law claim for assault and battery.

## STANDARD OF REVIEW

Summary judgement must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party

to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be accepted as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## DISCUSSION

### A.  Officers Stanco and Sterrick Are Not Entitled to Qualified Immunity or Summary Judgment

When a defendant police officer seeks qualified immunity, "a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *see also Greene v. Barber*, 310 F.3d 889 (6th Cir.2002). This is because qualified immunity is an immunity from suit, not just a

defense to liability. *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151.

The Supreme Court has set forth a two-part analysis for determining whether an officer who is alleged to have violated a constitutional right is entitled to qualified immunity, and these two factors must be considered in their proper sequence. *Id.* at 200, 121 S.Ct. 2151. The two factors are 1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, establish that the officer's conduct violated a constitutional right and, if so, 2) whether that right was clearly established at the time that the injury occurred. *Id.* at 201, 121 S.Ct. 2151.

### 1.  Whether the Officers' Conduct Violated a Constitutional Right

■ Assuming that plaintiff's account of the circumstances of his arrest on the morning of May 20, 2001 is correct, I conclude that a jury could find that Officers Stanco and Sterrick used excessive force when they arrested plaintiff, violating his Fourth Amendment right to be free from unreasonable seizures.

In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court explained that courts should analyze claims of excessive force by police officers under a Fourth Amendment objective reasonableness test.[1]  *See id.* at 397, 109 S.Ct. 1865. The Court explained that "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth

---

1. Plaintiff alleges in his complaint that defendants violated his Fourth, Fifth, and Fourteenth Amendment rights. He does not elaborate on these allegations, but, assuming that by invoking the Fifth and Fourteenth Amendments he intends to assert a substantive due process claim, his claim is without merit per *Graham v. Connor. See Graham*, 490 U.S. at

395, 109 S.Ct. 1865 ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against ... physically intrusive government conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [excessive force] claims.").

Amendment interests against the countervailing governmental interests at stake." *Id.* at 396, 109 S.Ct. 1865 (internal quotations omitted). This analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner,* 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)).

In the instant case, plaintiff alleges that Officers Stanco and Sterrick jumped on him as he lay, unaware of their presence, on the ground, apparently threatening no one and not resisting arrest. If plaintiff's version of the events is believed, he posed no threat to the officers or any other persons at the scene. Moreover, plaintiff alleges that he neither resisted arrest nor attempted to run away from the officers (indeed, he alleges that he did not have an opportunity to do so before the officers jumped on him). Additionally, the officers allegedly applied this extreme level of force to someone suspected of having turned over a nearby vending machine—hardly a violent or especially egregious crime. According to plaintiff's version of the arrest, the officers had no reason to believe that he had any weapons or posed an additional threat to nearby property as he lay on the ground.

A jury could, accordingly, find that defendants Stanco and Sterrick used excessive force when they arrested plaintiff by jumping on his neck and releasing pepper spray in his face.

### 2. Whether Violation of the Constitutional Right is Clearly Established

In addition to finding that Officers Stanco and Sterrick violated plaintiff's Fourth Amendment protection against unreasonable seizure, *Saucier* requires a finding that their actions were unreasonable in light of the specific circumstances of the situation and the facts of which they were aware at the time of the arrest. 533 U.S. at 202, 121 S.Ct. 2151 ("[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

This means that the court must decide "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151. Both the Supreme Court and the Sixth Circuit have recognized that officers can make reasonable mistakes as to the amount of force necessary in a given situation and employ an amount of force that, in hindsight, was excessive and unlawful. *See id.* at 205–06, 121 S.Ct. 2151; *Greene,* 310 F.3d at 894. The purpose of this inquiry, then, is to ensure that officers were on notice that their conduct was unlawful before they acted. *Id.*

In the instant case, Officers Stanco and Sterrick acted, according to plaintiff, in a vicious and unnecessarily forceful manner to restrain him when he was already lying on the ground. Even if I assume that the officers called out a warning to plaintiff, as they claim, and he simply did not hear that warning, they could not have reasonably concluded that they needed to pounce on and pepper spray[2] a vandalism suspect who showed no signs of resisting arrest or threatening the officers.

**2.** Plaintiff alleges that a third officer sprayed     the pepper spray in his face while Officers

If the jury credits plaintiff's version, it could also find that the officers could have either waited for him to respond to their requests that he get up or employed less forceful methods of ensuring that he was aware of their presence. Nothing in plaintiff's version of events indicates that there was a particular urgency with which they needed to act to apprehend and question him: he alleges that he was lying face-down on the ground, not running or otherwise attempting to escape from the police. Moreover, plaintiff points out that the officers did not charge plaintiff with resisting arrest.

The officers will claim that they acted reasonably because plaintiff was not, as he claims, lying on the ground when they encountered him. But they are not entitled to qualified immunity, because I must construe the facts in the light most favorable to plaintiff. Even if plaintiff thereafter resisted once the officers jumped on him, there is nothing in his account justifying use of force at the outset by Officers Stanco and Sterrick.

Defendants claim that the darkness of the field, plaintiff's intoxication, and "the fact that the officers were chasing a suspect that was fleeing the police" (Doc. 24, at 17) means that plaintiff cannot establish that the officers did not perceive plaintiff as a flight risk. However, if plaintiff really was lying on the ground, as he asserts, neither darkness nor plaintiff's intoxication by themselves make jumping on a prone suspect reasonably necessary to effect an arrest. Therefore, defendants Stanco and Sterrick are not entitled to qualified immunity or summary judgment because there are genuine issues of material fact as to the circumstances of the arrest and use of force.

---

Stanco and Sterrick were on top of him. Officer Sterrick claims that he pepper sprayed plaintiff before Officer Stanco "tackled" him.

### B. Officer Gardener Is Entitled to Qualified Immunity

Plaintiff alleges that a third officer, possibly Officer Gardener, participated in his arrest and may have sprayed pepper spray in his eyes. Defendants acknowledge that Officer Gardener and another officer, Officer Yost, were present at the scene. Officer Yost also was originally named as a defendant in plaintiff's complaint, but plaintiff voluntarily dismissed his claims against him when Yost was called to active military duty in Kuwait.

Plaintiff merely speculates that Officer Gardener participated in the arrest, but sets forth no specific allegation as to what role Officer Gardener might have played other than to state that some third officer assisted Officers Stanco and Sterrick by spraying the pepper spray in plaintiff's face while Officers Stanco and Sterrick held him down.

Under the first *Saucier* inquiry, this allegation is insufficient to establish that Officer Gardener violated plaintiff's Fourth Amendment right against unreasonable seizure or any other constitutional right. Therefore, Officer Gardener is entitled to dismissal.

### C. Chief of Police James Lang Is Entitled to Qualified Immunity

■ Plaintiff contends that Put–In–Bay Chief of Police James Lang is liable for the alleged constitutional violations committed by Officers Stanco and Sterrick because he was aware that Put–In–Bay police officers had a history of using excessive force with intoxicated individuals, that Officers Stanco and Sterrick had some history of using too much force in other situations, and the

---

(Doc. 24, exh. C, at 20). Either way, a Put–In–Bay police officer pepper sprayed plaintiff.

department in general had a reputation for using excessive force. Plaintiff claims that Chief Lang should have done something to address these issues but failed to do so. Plaintiff also claims that Chief Lang threatened to sue plaintiff if he filed any formal complaints against the Put–In–Bay police department after plaintiff's arrest on May 20, 2001.

Plaintiff's allegations are without merit. For Chief Lang to be held liable for the unlawful conduct of his subordinates, "he must have played an active role in the alleged violations." *Greene,* 310 F.3d at 899 (citing *Bass v. Robinson,* 167 F.3d 1041, 1048 (6th Cir.1999)) ("Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.' "). Because plaintiff has not alleged that Chief Lang was present at any time during his arrest or detention, and has only peripherally alleged that Chief Lang might have been responsible for failing to properly train his police officers, Chief Lang cannot be found to have violated any of plaintiff's constitutional rights. Chief Lang is, therefore, entitled to qualified immunity under the first inquiry of the *Saucier* analysis.

### D. The Village and Township of Put–In–Bay Are Entitled to Qualified Immunity

■ Plaintiff alleges that the Village of Put–In–Bay had a policy of indifference to its police officers' unconstitutional conduct, that the village "failed to train its police officers to perform their duties in conformity with an individual's constitutional rights," (Doc. 1, at 6) and that the village "failed to take meaningful action ... against conduct[ ] that occurred in the instant case and has occurred in the past." (*Id.*).

Municipalities are not wholly excluded from liability for § 1983 violations of con-

stitutional rights. *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A local government, however,

> may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694, 98 S.Ct. 2018.

To determine whether a municipality has a policy or custom that would invoke municipality liability, " '[a] court's task is to identify those who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the violation at issue.' " *Gregory v. Shelby County,* 220 F.3d 433, 441 (6th Cir.2000) (quoting *McMillian v. Monroe County, Ala.,* 520 U.S. 781, 784–85, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)). Additionally, " 'an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.' " *Gregory,* 220 F.3d at 441 (quoting *Bd. of County Comm'rs of Bryan County, Okla. v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

Although plaintiff alleges that the Village of Put–In–Bay did have a policy of allowing its police officers to use excessive force against intoxicated vacationers, he does not specify any examples of the application of such policy, other than to say that the village had allowed the use of excessive force in the past. Moreover, although plaintiff does allege that the conduct of Officers Stanco and Sterrick was in viola-

tion of the Put–In–Bay Police Department Policy and Procedures Manual, he does not offer any evidence that violations of the guidelines in that manual were a custom that was so widespread as to have the force of law. Indeed, the existence of a manual that would direct Put–In–Bay police officers to act more appropriately than plaintiff alleges Officers Stanco and Sterrick acted is evidence that the village did *not* have a policy of condoning unconstitutional conduct. It is also evidence that the village has *not* failed to train properly its police officers. It establishes that, if plaintiff's account of his arrest is accurate, Officers Stanco and Sterrick acted in violation of village and department policies and procedures.

Additionally, plaintiff's attempt to hold the Village of Put–In–Bay liable for the alleged unconstitutional policies of the police department is without merit because "if no liability attaches to the police chief, no liability attaches to the [village] either." *Greene*, 310 F.3d at 899. I have already found that Put–In–Bay Chief of Police James Lang is entitled to qualified immunity in the instant case and is therefore not liable for plaintiff's alleged injuries.

Plaintiff has not established that the Village or Township of Put–In–Bay has any liability for the alleged violations of his constitutional rights. The Village and Township, therefore, are entitled to qualified immunity.

**E. Defendants Gardener, Lang, and the Village and Township of Put–In–Bay Are Also Entitled to Summary Judgment on Plaintiff's State Law Claim**

■ Because defendants Gardener, Lang, and the Village and Township of Put–In–Bay are entitled to qualified immunity on plaintiff's § 1983 claims, each of these defendants is also entitled to summary judgment as to plaintiff's claim for assault and battery. Assuming that plaintiff's account of the circumstances of his arrest is true, plaintiff has failed to connect any of these defendants to the alleged conduct that gives rise to his assault and battery claim.

Plaintiff has not alleged that Officer Gardener specifically participated in the alleged unconstitutional conduct of Officers Stanco and Sterrick. Therefore, there is no material issue of fact connecting Officer Gardener to plaintiff's claims, and he is entitled to judgment as a matter of law.

Plaintiff has failed to establish that Chief Lang or the Village and Township of Put–In–Bay had a policy favoring or otherwise condoned the alleged unconstitutional conduct of Officers Stanco and Sterrick. Moreover, although Chief Lang's alleged threats to plaintiff to discourage him from filing a formal complaint against the police department, if true, would be ill-advised, they do not constitute assault and battery. Therefore, there are no material issues of fact in dispute as to this claim, and Chief Lang and the Village and Township of Put–In–Bay are entitled to summary judgment.

**CONCLUSION**

In light of the foregoing, it is

ORDERED THAT

1) Defendants' Motion for Summary Judgment be, and hereby is, denied as to defendants David Stanco and Brian Sterrick; and

2) Defendants' Motion for Summary Judgment be, and hereby is, granted as to defendants James Gardener, James Lang, the Village of Put–In–Bay, Ohio, and the Township of Put–In–Bay, Ohio.

So ordered.