NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0252n.06
Filed: April 4, 2005

No. 03-6520

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JIMMIE D. KNIGHT, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| THE METROPOLITAN GOVERNMENT | ) | MIDDLE DISTRICT OF TENNESSEE |
| OF NASHVILLE AND DAVIDSON | ) | |
| COUNTY, TENNESSEE, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |

Before: **MARTIN, GILMAN, and FRIEDMAN, Circuit Judges.**[*]

**RONALD LEE GILMAN, Circuit Judge.** In 1975, Jimmie D. Knight, a police officer with the Metropolitan Nashville Police Department (Metro), was injured on the job. Following years of intermittent work thereafter with Metro and other entities, Knight's physician finally cleared him to return to the police force in 1999 with no restrictions. Knight informed Metro of his desire to return to work at that time, but he was never rehired for reasons disputed by the parties. He brought suit against Metro under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, alleging that Metro's refusal to allow him to return to the force was part of a department-wide unofficial policy of not rehiring disability pensioners. A jury delivered a verdict in Knight's

---

[*]The Honorable Daniel M. Friedman, Senior United States Circuit Judge with the Court of Appeals for the Federal Circuit, sitting by designation.

favor and awarded him $150,000 in compensatory damages. Metro moved (1) to alter or amend the judgment, (2) for judgment as a matter of law, and (3) for a new trial. All three motions were denied by the district court.

On appeal, Metro argues that the district court erred in not granting Metro's motion for judgment as a matter of law. It also contends that, in the alternative, Metro should have received a new trial or a remittitur because the jury verdict was excessive and against the weight of the evidence. Finally, Metro claims that the district court erred in allowing the jury to consider prejudicial testimony that should have been excluded as inadmissible hearsay. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

In 1975, Knight, a Metro police officer, injured his back and neck in a motorcycle accident that occurred while he was on duty. His injuries required him to be placed on disability status in 1979. From 1979 to 1986, he worked for Metro intermittently as his injuries allowed. He received a disability pension when he was not working. Knight began taking on other part-time jobs starting in 1986, but continued to collect his pension from Metro. While working as a security guard at a department store in 1995, Knight reinjured his back. He remained on disability status until August of 1999, when he was reevaluated by his personal physician, Steven Kinney, and informed that he could return to work as a police officer without restrictions.

Knight delivered a letter to the Metropolitan Benefit Board from Dr. Kinney that same month authorizing him to return to work. In April of 2000, the Benefit Board recommended that Knight be allowed to return to his previous position as a police officer.

At this point, the parties' characterization of the subsequent events in this case diverge. According to Metro, arrangements were immediately made for Knight to attend a 13-week lateral-training course "to get [Knight] back up to speed on Metropolitan police procedure and make him a productive officer." He did not begin the class as scheduled, however, because the Metropolitan Civil Service Clinic was unable to provide the medical clearance necessary for Knight's admission into the class. Metro instead told Knight that he could enter the class late or enroll in the spring class, so long as he provided the Clinic with certain documents from his medical record. But Knight, according to Metro, did not furnish the documents and refused to attend the training course. Knight's disability pension was eventually terminated because he purportedly refused to accept employment with Metro.

Not surprisingly, Knight's account of his treatment is quite different. According to Knight, after he was cleared to return to work by the Benefit Board, Metro undertook a series of actions intended to prevent him from returning to the police force. He was repeatedly told that the Chief of Police, Emmett Turner, would never rehire an individual on a disability pension. The Chief himself told Knight that he was concerned that pensioners often returned to the police force for the sole purpose of obtaining a higher salary and then went back to disability status to collect a larger pension. So even though the Benefit Board recommended that Knight be rehired and there were openings on the police force, Metro allegedly made no legitimate efforts to rehire Knight.

Eventually, Knight was informed that he could enroll in the lateral-training course, but was also told that his salary once he was rehired would be only one step above that of a new recruit.

Knight nevertheless showed up for the training course. On the first day, however, he was informed by Sergeant Kim Gooch, the director of the course, that he could not participate because he had not been medically cleared. Sergeant Gooch also told Knight that Metro had never rehired a pensioner, and that his offer of reemployment was conditional upon his performance in the class. Knight perceived this admonition to be a threat that, once he began the class, he would be fired if he did not meet the standards expected of new recruits, rather than those expected of returning disability pensioners. As a result, Knight chose not to complete the course and returned to his former job at the department store. Eventually, he was hired to work as a police officer in La Vergne, Tennessee.

Knight filed suit against Metro in May of 2001 in the United States District Court for the Middle District of Tennessee. He alleged that Metro's refusal to allow him to return to the force was part of a department-wide unofficial policy of not rehiring disability pensioners. His case went to trial before a jury. The jury found that Metro regarded Knight as disabled, that Metro was aware that Knight had a record of a disability, and that Metro's proffered reasons for failing to rehire Knight were pretextual. It awarded Knight $150,000 in compensatory damages. In addition, the judge awarded Knight an additional $27,482 in back pay and ordered that Knight be reinstated to his former position.

Metro moved (1) to alter or amend the judgment, (2) for judgment as a matter of law, and (3) for a new trial. All three motions were denied by the district court. The court explained that

"[a]mple evidence was presented to support the jury's findings that Metro both regarded the plaintiff as disabled and was aware that the plaintiff had a record of a disability." This appeal followed.

## II. ANALYSIS

### A. Standard of review

A district court's refusal to grant a motion for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure is reviewed de novo. *Jackson v. Quanex Corp.*, 191 F.3d 647, 657 (6th Cir. 1999). We view the evidence in the light most favorable to the nonmoving party, *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001), and will affirm the jury's verdict unless there was "no legally sufficient evidentiary basis for a reasonable jury to find for [the prevailing] party." Fed. R. Civ. P. 50(a).

The district court's denial of a defendant's motion for remittitur or a new trial is reviewed under the abuse-of-discretion standard. *Gregory v. Shelby County,* 220 F.3d 433, 443 (6th Cir. 2000). We may find an abuse of discretion and grant a new trial where the verdict is unreasonable and against the weight of the evidence. *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820-21 (6th Cir. 2000). But "a jury verdict should not be remitted by a court unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." *Jackson v. City of Cookeville*, 31 F.3d 1354, 1359 (6th Cir. 1994) (quotation marks omitted).

The district court's admission of testimony and other evidence is also reviewed under the abuse-of-discretion standard. *Sommer v. Davis*, 317 F.3d 686, 693 (6th Cir. 2003). "Even if the trial court abuses its discretion, a new trial is not required unless substantial rights of a party are

affected. . . . Thus, an abuse of discretion that does not affect substantial rights is harmless error and is to be disregarded." *United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993) (citation and quotation marks omitted).

**B.       Metro's motion for judgment as a matter of law**

Under the ADA, no covered employer

shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* at § 12111(8). To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate "(1) that she or he is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation, and (3) who was discriminated against solely because of the disability." *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002). Metro contends that it should have been granted judgment as a matter of law because Knight did not show that he was disabled as required by the ADA and therefore could not establish a prima facie case of discrimination.

A disability is defined by the ADA as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Knight does not dispute that he did not have an actual limiting impairment as described in § 12102(2)(A)

at the time he requested to be rehired. Instead, the issue in contention is the jury's determination that Metro was in fact aware that Knight had a record of a disability and that Metro regarded him as having such a disability.

An individual has a record of an impairment if he has "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 28 C.F.R. § 35.104. A plaintiff does not need to "demonstrate a present impairment that is substantial enough to qualify as disabling under the ADA." *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 509 (7th Cir. 1998). The "plaintiff only needs to show that 'at some point in the past'" he had such an impairment. *Lloyd v. E. Cleveland City Sch. Dist.*, 232 F. Supp. 2d 806, 812 (N.D. Ohio 2002) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1120-21 (5th Cir. 1998)).

Here, Knight offered evidence that he had a record of a disability that substantially limited the major life activity of working. The Supreme Court has held that, when plaintiffs claim that their disability "substantially limited" their ability to work, they must "allege [that] they are unable to work in a broad class of jobs." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999). Simply being precluded from a particular job does not satisfy this requirement. *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 523 (1999).

Knight presented testimony that Metro considered individuals who were receiving disability pensions to be "disabled." While on disability status, Knight was sometimes unable to work at all. At other times, he was able to work only in a light-duty capacity. Knight's testimony regarding his work history was sufficient evidence for a jury to conclude that he was previously limited in the major life activity of working and that he therefore had a record of being disabled. *See Lloyd*, 232

F. Supp. 2d at 813 (holding that, after "[g]ranting [the plaintiff] the benefit of reasonable inferences that can be drawn from these facts, [the plaintiff] has presented a factual dispute of whether he had a record of disability").

In addition to arguing that Knight did not have a record of a disability, Metro contends that it did not regard Knight as disabled. An individual may be "regarded as" disabled if

> (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Sutton*, 527 U.S. at 489. This court has held that "[t]his part of the [ADA] is intended to allow individuals to be judged according to their actual capacities, rather than through a scrim of myths, fears, and stereotypes accruing around a perceived impairment." *Mahon*, 295 F.3d at 592 (quotation marks omitted). Here, Knight claims that Metro regarded him as disabled because it mistakenly believed that he had a limiting impairment. *See Sutton*, 527 U.S. at 489.

Knight presented evidence that Metro, under the direction of Chief Turner, flatly refused to rehire disability pensioners, even though they were authorized to work with no restrictions. Numerous witnesses testified on his behalf that Metro had an unofficial policy to that effect. For example, James Luther, the executive secretary of the Benefit Board, testified that Chief Turner had never returned a disability pensioner to the position of a police officer, and that Metro was not proactive in assisting pensioners who wished to return to work. Edna Jones, an employee of the Benefit Board, testified that, despite a "push from the Benefit Board[,] . . . Metro, again, had just not

had a history of bringing disability pensioners back." Chief Turner himself testified that "it would have been bad management to bring people back to put them behind a desk if they could not perform the duties of a police officer."

The testimony of these witnesses provided a sufficient basis for the jury to conclude that Metro regarded Knight as disabled, even though he did not, in fact, still have a disabling condition. *See Henderson v. Ardco, Inc.*, 247 F.3d 645, 651 (6th Cir. 2001) (holding that the plant manager's statement that "there is not a job in the plant that [the plaintiff's] restrictions would not bump into" created a genuine issue of material fact as to whether the employer regarded the plaintiff as disabled, and therefore "consider[ed] someone with physical restrictions unable to 'make it' doing factory work, even if it is within the technical requirements of the worker's restrictions").

Metro clearly disagrees with the jury's determination that Metro regarded Knight as disabled. But our role is limited to "determin[ing] whether the record contains evidence sufficient to have allowed reasonable jurors to find in favor of plaintiff." *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997). We are not permitted to weigh the evidence or make credibility determinations, which are tasks within the sole province of the jury. *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 696 (6th Cir. 2000). Here, the record contains sufficient evidence to support the jury's verdict. The district court therefore did not err in concluding that "[t]he jury made credibility determinations and drew reasonable inferences in favor of the plaintiff, and the court cannot find that the defense motion meets the standard for the granting of judgment as a matter of law."

**C.      Metro's motion for a new trial or remittitur**

*1.      New trial*

A new trial is warranted where a jury reaches a "seriously erroneous result," either because the verdict was against the weight of the evidence, the damages were excessive, or the trial was unfair to the moving party. *Holmes v. City of Massillon*, 78 F.3d 1041, 1046 (6th Cir. 1996). The trial court should deny a motion for a new trial "if the verdict is one that reasonably could be reached, regardless of whether the trial judge might have reached a different conclusion were he the trier of fact." *Wayne v. Village of Sebring*, 36 F.3d 517, 525 (6th Cir. 1994).

Metro contends that the jury verdict was against the weight of the evidence, entitling Metro to a new trial. Its arguments are nearly identical to those it offered in support of its motion for judgment as a matter of law. Just as Metro is not entitled to judgment as a matter of law in light of the evidence submitted by Knight, neither is it entitled to a new trial. As the district court explained in its order denying Metro's motion, "[t]he defense argument urging that the verdict was against the weight of the evidence merely draws inferences from the proof that support[s] the defense theory of the case. Obviously, the jury did not agree with that theory, nor the inferences that Metro argued they should draw from the proof." That the ultimate result was not the one Metro had hoped for does not mean that the verdict was against the weight of the evidence.

### 2.     *Remittitur*

Metro also argues that, in the event that its motion for a new trial is denied, it should at least be granted a remittitur. A trial court may remit a verdict "only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice[,] or is so excessive or inadequate as to shock the judicial conscience of the court." *Gregory v. Shelby County*, 220 F.3d 433, 443 (6th Cir. 2000). We must

allow an award of damages to stand unless it "is (1) beyond the range supportable by proof or (2) so excessive as to shock the conscience, . . . or (3) the result of a mistake." *Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 156 (6th Cir. 1996) (alteration in original).

Here, the jury awarded Knight $150,000 in compensatory damages, an amount that Metro contends is excessive. Metro does not quarrel with the district court's instruction that the jury could award compensatory damages for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, or other nonpecuniary losses the Plaintiff experienced as a consequence of Defendant's discrimination" in an amount "fair in light of the evidence presented at trial." *See* 42 U.S.C. § 1981a(b)(3) (listing the bases for compensatory damages). Instead, Metro claims that Knight offered insufficient evidence to justify the amount of the jury's award.

Contrary to Metro's assertions, however, we find no basis to conclude that the award was "clearly excessive." *See Gregory*, 220 F.3d at 443. Knight testified at trial regarding his emotional distress, financial hardship, and reduced standard of living resulting from his inability to return to the police force. *See Turic v. Holland Hospitality, Inc.*, 85 F.3d 1211, 1215 (6th Cir. 1996) (holding that a "plaintiff's own testimony, along with the circumstances of a particular case, can suffice" to justify an award of compensatory damages). In addition, other circuits have upheld comparable amounts awarded to plaintiffs alleging a violation of the ADA under similar circumstances. *See Mathieu v. Gopher News Co.*, 273 F.3d 769, 783 (8th Cir. 2001) (holding that an award of $165,000 for emotional harm to the plaintiff who "lost his job of thirty[-]four years, was forced to reduce his standard of living, and had become depressed" did not shock the conscience of the court)*; Giles v. Gen. Elec. Co.*, 245 F.3d 474, 488 (5th Cir. 2001) (remitting an award from $300,000 to $150,000

where the plaintiff was "despondent, depressed, down and absolutely utterly discouraged about not being able to [go] back to work"). We therefore hold that the district court did not abuse its discretion in refusing to grant Metro's motion for a remittitur.

**D.      Admissibility of the statements of Melanie Drury and Henry Rogers**

Finally, Metro argues that the district court abused its discretion in admitting the testimony of Melanie Drury, the case worker assigned to Knight by the Benefit Board, and Henry Rogers, a now-deceased Metro police captain. Metro contends that the statements of both witnesses were hearsay and therefore should have been excluded.

*1.      Melanie Drury*

Drury purportedly told Knight that he was wasting his time in trying to return to the police force because Chief Turner had a practice of not rehiring disability pensioners. The district court admitted Drury's statements to Knight on the ground that she had apparent authority to speak on behalf of Metro because she was the case worker assigned to Knight by the Benefit Board. *See* Fed. R. Evid. 801(d)(2) (stating that an admission by a party opponent, either in an individual or representative capacity, is not hearsay). But the contract between Drury's employer, Eckman Freeman & Associates, and the Metropolitan Government explicitly provides that "[a]ll services performed by the Case Manager are provided in the capacity of an independent contractor and not as an officer, agent or employee of the Metropolitan Government."

In light of this contractual disclaimer, a serious question exists as to whether Drury's statement falls within the exception to the hearsay rule for statements made by a "party's agent or servant concerning a matter within the scope of the agency or employment, made during the

existence of the relationship." Fed. R. Evid. 801(d)(2)(D). We need not resolve this issue, however, because "errors in the exclusion of evidence may be cured by the admission of other evidence of substantially the same nature." *United States v. Holloway*, 740 F.2d 1373, 1379 (6th Cir. 1984) (quoting *Warden v. United States*, 391 F.2d 747, 750 (10th Cir. 1968)); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) ("Whether such an error is harmless in a particular case depends upon a host of factors . . . [that] include . . . whether the testimony was cumulative, [and] the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points . . . ."); *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 514 (6th Cir. 1998) ("Even if a mistake has been made regarding the admission or exclusion of evidence, a new trial will not be granted unless the evidence would have caused a different outcome at trial.").

Here, numerous other Metro employees offered testimony that was substantially similar to Drury's, including that of Chief Turner. Drury's statements were therefore cumulative, and their admission—if in error—was harmless. *See Ford v. Curtis*, 277 F.3d 806, 810 (6th Cir. 2002) (holding that "[t]here was ample evidence, besides the statements made by [the witness], upon which to base a conviction and we are not convinced that the verdict would have been different if [the witness's] hearsay statements had been excluded").

### 2.    *Henry Rogers*

Rogers allegedly advised Knight that he would not be rehired by Metro because he was too old. Metro contends that Rogers's statement was not only inadmissible hearsay, but was also irrelevant and highly prejudicial. In Metro's view, "it is conceivable that the jurors in this case penalized the Metropolitan Government for what they believed was underlying age discrimination."

Rogers's statement, however, was not inadmissible hearsay because it qualifies as an admission by a party opponent's agent. *See* Fed. R. Evid. 801(d)(2). At the time that he made the statement, Rogers was an agent of Metro because he was the Director of Personnel for the police department. Moreover, his statement was clearly made within the scope of his agency because it concerned hiring procedures. *See Mitroff v. Xomox Corp.*, 797 F.2d 271, 276 (6th Cir. 1986) ("[A] statement of an agent or employee may be admissible against the principal . . . if within the scope of his agency or employment . . . .").

Even though Rogers's statement was not inadmissible hearsay, it was likely irrelevant. We find no need to decide whether the district court abused its discretion in admitting Rogers's statement, however, because the district court eliminated any potential prejudice by instructing the jury as follows: "Members of the jury, this case isn't about age. This case is about disability discrimination so you should disregard any reference to age." *See Shanklin v. Norfolk S. Ry. Co.*, 369 F.3d 978, 991 (6th Cir. 2004) ("Even where evidence is erroneously admitted, . . . instructions to the jury to disregard the evidence will usually cure the error, unless the evidence is so prejudicial that a new trial must be granted."). Here, in light of the cumulative evidence presented by Knight of Metro's policy not to rehire disability pensioners, we do not find Rogers's statement so prejudicial as to require a new trial.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.