COOK, Circuit Judge.
Edward Lentz, Jr., a white Cleveland police officer, sued the City of Cleveland and various officials (“Defendants”) for discriminating and retaliating against him after he shot the adolescent black driver of a stolen vehicle. A jury agreed with Lentz, awarding him $800,000 in damages. Defendants challenged the sufficiency of the evidence and the court’s evidentiary rulings, and sought a remittitur though a *44 Rule 50 motion. On appeal, Defendants challenge the district court’s denial of that motion. Lentz cross appeals. We reverse and remand the district court’s denial of the remittitur, but affirm the other aspects of its denial of Defendants’ Rule 50 motion. We also deny the cross-appeal.
I.
The shooting occurred while Lentz guarded the home of Mayor-elect Jane Campbell in 2001. He observed a station wagon proceed erratically down the street and abruptly stop behind his squad car. As Lentz approached, the car backed up, hit a tree, and Lentz somehow ended up on its roof. To get the car to stop as it drove toward an intersection — with him on top — Lentz fired fourteen rounds through its roof, injuring the black juvenile driver.
The Police Department (“Department”) assigned Lentz to police gymnasium duty pending an investigation and it is the lengthy duration of this assignment that spurred Lentz’s complaint — he spent 652 days on gym duty, much longer than the time typically served by officers involved in shootings. The Use of Deadly Force investigation team (“UDF”) completed its investigation within a normal time frame and the assistant prosecutor submitted a felonious-assault charge to a grand jury. But before the grand jury could decide whether to indict Lentz, a Department official — Lieutenant Robert Klimak — withdrew the case from grand jury consideration and retained the file for some five months — from April to October 2002 — before he returned it to the chief prosecutor.
The prosecutor resubmitted the felonious-assault charge and added a misdemeanor count of providing false information to the UDF. The grand jury indicted Lentz on the falsification charge only; the court later dismissed the charge. The Department then filed departmental disciplinary charges against Lentz for (1) violating the “use of force” policy; (2) lying about the shooting; and (3) failing to notify dispatch before approaching the vehicle. Lentz conceded the “failure to notify” charge and the Department dismissed the others. On September 17, 2003, nearly 22 months after the shooting, the Department reinstated Lentz with back pay.
In his state court complaint, Lentz alleged a variety of claims against the Defendants, who removed the case to federal court. That federal jury found that the Defendants unlawfully discriminated and retaliated against Lentz, and found the City liable under Section 1983. When Defendants moved for judgment as a matter of law, a new trial, or remittitur, the district court refused. On appeal, Defendants contend that: the evidence fails to support the jury’s verdict; that the district court erred in six evidentiary rulings; and that the jury awarded excessive damages. Lentz cross-appeals the denial of his motion for prejudgment interest.
II.
We first address Defendants’ claims relating to the denial of their Rule 50 motion for judgment as a matter of law. We review de novo. White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 794 (6th Cir.2004) (en banc).[1] Defendants assert that sufficient evidence did not support the jury’s findings that: (1) Defendants discriminated against Lentz; (2) Defendants retaliated against Lentz for engaging in *45 protected activity; and (3) the City had a municipal policy to discriminate against white officers, and more particularly to retaliate against Lentz, in violation of 42 U.S.C. § 1983. We address each argument in turn.
A. Evidence of Discrimination
The familiar McDonnell Douglas framework guides Lentz’s discrimination claims under federal and Ohio law. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Little Forest Med. Ctr. of Akron v. Ohio Civil Rights Comm’n, 61 Ohio St.3d 607, 575 N.E.2d 1164, 1167 (1991). To establish a prima facie case, a plaintiff must demonstrate: (1) membership in a protected group;[2] (2) that the plaintiff was qualified for the position; (3) that the plaintiff was subject to adverse employment action; and (4) that the plaintiff was treated differently than similarly situated employees. The burden then shifts to the defendant to articulate a legitimate, non-diseriminatory reason for its action, after which the plaintiff must demonstrate that the proffered reason is a pretext for discrimination. McDonnell Douglas, 411 U.S. at 802-04, 93 S.Ct. 1817.
Following a trial on the merits, our review focuses on the “ultimate question of discrimination,” and not the prima facie case. Noble v. Brinker Int’l Inc., 391 F.3d 715, 720 (6th Cir.2004) (quoting Gray v. Toshiba Am. Consumer Prods., Inc., 263 F.3d 595, 599 (6th Cir.2001)). Nonetheless, Defendants dispute the individual elements, particularly whether (1) adverse employment action occurred, and (2) the other employees are similarly situated. We need not address either argument because “our duty ... is simply to determine whether [plaintiff] produced sufficient evidence to support the jury’s finding of intentional discrimination.” Noble, 391 F.3d at 721.
We also decline to address the argument that the district court improperly took the adverse employment action element away from the jury, finding that Defendants’ failure to raise the issue in their Rule 50(a) motion precluded them from raising it in a post-verdict motion for judgment as a matter of law. Defendants’ oral motion mentioned adverse employment action only as part of a generalized objection to the sufficiency of the evidence. And while we agree that “[technical noncompliance with Rule 50(b) may be excused in situations in which the purposes of the rule are satisfied,” Kusens v. Pascal Co., 448 F.3d 349, 361 (6th Cir.2006) (quoting Scottish Heritable Trust, PLC v. Peat Marwick Main & Co., 81 F.3d 606, 610 (5th Cir.1996)), this is not such a case. Rule 50 serves to “alert the opposing party to the insufficiency before the case is submitted to the jury,” Scottish Heritable Trust, 81 F.3d at 610, but Defendants’ conduct undermined that purpose. As Judge O’Malley explained:
[Y]ou never sought reconsideration from that finding from Judge Manos, so that’s why I conclude that he had already made that finding, that the parties relied on that finding in preparing and presenting the case, and frankly, I had relied on that finding throughout.
Neither do we find Defendants’ objection sufficient under Rule 51, which requires that “[a] party who objects to an instruc *46 tion or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection.” Fed.R.Civ.P. 51(c)(1) (emphasis added). Defendants’ murky attempt to preserve some objection to “the assignment of gymnasium duty as adverse employment” fails Rule 51’s clarity requirement. Indeed, coming hard on the heels of Judge O’Malley’s Rule 50 decision, it is not clear whether this objection even pertained to a specific jury instruction.
As for the sufficiency of the evidence, Lentz presented extensive evidence about gym duty, departmental charges, and the experiences of other officers. Testimony described gym duty as particularly unpleasant. And Lentz employed circumstantial evidence to link his unique treatment to a discriminatory motive: African-American officers involved in shootings served much shorter gym details — the longest, 254 days, was less than half Lentz’s assignment. Defendants seek to discredit that evidence by arguing that those officers had different experiences, but “similarly situated” only requires comparability in “all relevant respects,” not congruent experiences. Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir.1998). Many of these officers participated in automobile-related shootings and received gym duty assignments while under investigation pursuant to the relevant Departmental procedures; they fit the requirements of Ercegovich. See id.
Sufficient evidence also supports the jury’s finding that Defendants’ nondiscriminatory reasons were pretextual. A plaintiff can establish pretext by showing that the reasons: (1) have no basis in fact; (2) did not motivate the decision; or (3) are insufficient to explain the adverse action. Carter v. Univ. of Toledo, 349 F.3d 269, 274 (6th Cir.2003). Lentz cast doubt on Defendants’ reasons through evidence that, although the UDF investigation finished in three months, Lieutenant Klimak took the file back for the unspecific reason that he wanted to “take a closer look” at the case. Other evidence highlighted Safety Director Draper’s concerns with race relations and his desire to avoid “another Cincinnati,” referring to large-scale race riots.
Circumstantial evidence undermined Defendants’ nondiscriminatory reasons. For example, the five officers with the longest gym details were white officers who shot black suspects. Moreover, Lentz offered evidence that City officials discussed handling shootings of black suspects “with care” to avoid “civil unrest”; that Draper met with the Cleveland NAACP President, who expressed race relations concerns; and that officials discussed the Cincinnati riots. The court even admitted news clips and a summary of television coverage of the shooting to highlight its “high profile” nature. Given this evidence, the jury could reasonably conclude that Defendants’ espoused reasons were a pretext for the City’s discriminatory decision to treat Lentz more harshly than it would similarly-situated black officers. Accordingly, Defendants have not presented a reason to surmount the “substantial deference owed a jury verdict.” Radvansky v. City of Olmsted Falls, 496 F.3d 609, 613 (6th Cir.2007).
B. Evidence of Discriminatory Policy
Turning to municipal liability, Defendants contend that the jury could not reasonably conclude from the evidence that the City had an official policy or custom of discrimination. Such a policy or custom is a prerequisite for a plaintiff to hold a city liable for a constitutional violation. Monell v. Dept. of Soc. Servs. of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 *47 L.Ed.2d 611 (1978). Even a single policymaker’s decision can constitute official policy, Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), but that policymaker must possess “final authority to establish municipal policy with respect to the action ordered,” id. at 482, 106 S.Ct. 1292. Likewise, a subordinate’s decision may support municipality liability if ratified by an authorized policymaker. Feliciano v. City of Cleveland, 988 F.2d 649, 656 (6th Cir.1993).
Sufficient circumstantial evidence exists to permit the jury to conclude that City policymakers either discriminated against him themselves or ratified a subordinate’s decision to do so. Lentz proffered evidence that Director Draper issued and ratified departmental charges, including the amended charges that extended Lentz’s gym duty by two months. Draper conceded as much, and his authorization of the charges constitutes city policy under Mo-nell. See Monell, 436 U.S. at 694, 98 S.Ct. 2018. Moreover, Lentz presented evidence that the Director and the Mayor repeatedly discussed the case’s political risks. Those discussions — which suggest that City officials worried about the racial component of the shooting — together with Draper’s authorization of Department charges, furnish sufficient evidence for the jury to reasonably conclude that a policymaker made or ratified a discriminatory decision. Accordingly, we reject Defendants’ challenge to the sufficiency of the evidence supporting municipal liability.
C. Evidence of Retaliation
The McDonnell Douglas framework also applies to Lentz’s retaliation claim. Dixon v. Gonzales, 481 F.3d 324, 333 (6th Cir.2007). To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) the plaintiff engaged in protected activity; (2) the protected activity was known by the defendant; (3) the defendant took “materially adverse” action against the plaintiff; and (4) the protected activity and adverse action were causally connected. Abbott v. Crown Motor Co., Inc., 348 F.3d 537, 542 (6th Cir.2003). As with the discrimination claim, a plaintiff must respond to an employer’s nonretalia-tory reason by showing that the proffered reason was pretext for retaliation. Id.
We need only consider whether sufficient evidence supported the knowledge and adverse-action elements. Defendants stipulated that Lentz engaged in protected activity when he filed an EEOC complaint. As for causation, Defendants’ failure to challenge it in their Rule 50(a) motion barred raising it in a post-verdict motion for judgment as a matter of law.
Lentz introduced evidence of the other two elements at trial. Regarding knowledge, he showed that the “Chiefs Office” received his grievance and that Director Draper knew Lentz filed an EEOC charge. And the same evidence that supported the discrimination claim — that gym duty was unpleasant, perceived as a form of punishment, and deprived Lentz of opportunities for additional pay — supports finding adverse action.
Finally, as to pretext, the district court gave the jury clear instructions:
[i]n order to prove that defendants City of Cleveland’s alleged explanation is a pretext for impermissible retaliation, plaintiff Edward Lentz must show both that the explanation is false and that retaliation was the real reason the defendant took the adverse action.
The court acknowledged that the evidence of pretext was not as strong as with respect to the discrimination claim. Nonetheless, Lentz presented evidence that this was a high-profile case discussed by policymakers, including Mayor Campbell and Director Draper. Keeping in mind the jury’s *48 right to make all relevant credibility determinations, the jury could reasonably conclude that Lentz’s protected activity motivated the policymakers. The jury heard this evidence, received clear instructions, and determined that the City unlawfully retaliated against Lentz. That evidence suffices; we will not upset the jury’s verdict.
D. Evidence of Retaliatory Policy
Sufficient evidence also supports the verdict finding the City liable for retaliation under 42 U.S.C. §§ 1981 and 1983. As with his discrimination claim, Lentz adduced evidence that Director Draper personally ratified the departmental charges while aware of the EEOC grievance. Likewise, the circumstantial evidence that policymakers discussed Lentz’s case supports the jury’s inference of a decision to unlawfully retaliate against Lentz. Accordingly, we leave undisturbed the jury’s finding of municipal liability.
III.
Defendants attack six of the district court’s evidentiary rulings. In holding that these rulings did not furnish grounds for judgment as a matter of law, the district court properly applied Rule 61 of the Federal Rules of Civil Procedure:
[N]o error in admitting or excluding evidence ... is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party’s substantial rights.
In our fresh review, we apply the same standard and conclude that the district court did not err. See White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 794 (6th Cir.2004) (en banc). None of the evidentiary rulings prejudiced Defendants’ substantial rights.
A.Witnesses
First, Defendants assert that Officers Joseph Paskvan and James Simone, and union president Robert Beck, offered improper opinion testimony. But the court carefully limited their testimony to evidence based on firsthand knowledge. It repeatedly sustained Defendants’ objections and reminded the witnesses about the permissible scope of them testimony. Given that careful restriction, we do not find that this testimony affected Defendants’ “substantial rights.”
B.News Stories
Second, Defendants contend that the district court erred in allowing Lentz to refer to news stories about the shooting, which they insist constituted prejudicial hearsay. But these references merely confirmed that the City’s policymakers were aware of the “high profile” nature of the case; Lentz did not seek to convince the jury of their truth. See Fed.R.Evid. 801. Moreover, the district court strictly limited this evidence — it only permitted Lentz to show the jury one of the fifty news clips, even though the jury requested more. Because the court circumscribed these references to relevant, nonhearsay purposes, we cannot find that they prejudiced the Defendants’ substantial rights.
C.EEOC Charges
Third, Defendants allege prejudice from the court allowing Lentz to include in his testimony references to the City’s release of his medical records — the subject of his EEOC charge. But the district court similarly limited Lentz’s references to the alleged release, and even instructed the jury that “there is no evidence that the City actually released his medical records.” *49 Given these limits, Defendants fail to show the requisite prejudice.
D.Dr. Steinberg’s Testimony
Fourth, Defendants object to the testimony of Dr. Joel Steinberg, an expert witness who testified about Lentz’s emotional and psychological damages. But while they purport to argue the unreliability and irrelevance of his testimony, their challenge focuses primarily on credibility — a matter for the jury to settle — and not admissibility.
E.Grand Jury
Fifth, Defendants assert that the district court erred by allowing Lentz to refer to the grand jury’s failure to indict him for felonious assault. That reference, they argue, prejudiced them because the jury could assume that Defendants charged Lentz without probable cause. But no substantial prejudice resulted when the jury also heard from the Prosecutor that the failure to indict is common and does not imply the absence of probable cause.
F.Similarly Situated Employees
Defendants maintain that other officers’ testimony should have been excluded as those officers were not similarly situated. As we explained in evaluating the eviden-tiary sufficiency for the discrimination claim, however, the experiences of those officers were sufficiently comparable in the relevant respects. See Ercegovich, 154 F.3d at 352. Further, the court instructed the jury to determine for itself whether these officers were similarly situated.
IV.
Defendants contend that the district court erred by denying a remittitur because the evidence adduced on damages cannot support an $800,000 award. We review for abuse of discretion, Gibson v. Moskowitz, 523 F.3d 657, 663 (6th Cir.2008), noting that a district court may reduce an excessive jury award if “it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party’s loss,” American Trim, LLC v. Oracle Corp., 383 F.3d 462, 475 (6th Cir.2004) (quoting Farber v. Massillon Bd. of Educ., 917 F.2d 1391, 1395 (6th Cir.1990)). But rather than evaluate the evidence supporting the jury award, the district court rested its denial on the failure to propose interrogatories to test the jury verdict: “Having not objected to the absence of interrogatories requiring the jury to parse out its award, Defendants are left without firm ground to argue that any particular basis for the jury’s award is without support.” We view it differently, though, because subtracting the maximum economic-damages award Lentz’s evidence could support leaves a remainder of some $700,000 to compensate for his temporary emotional harm, a sum that manifests “plain injustice,” and an abuse of discretion. See Rodgers v. Fisher Body Div., Gen. Motors Corp., 739 F.2d 1102, 1106-09 (6th Cir.1984).
Lentz proffered evidence of two kinds of damages: “economic” and “emotional.” The economic category sought compensation for (1) lost extended tour (overtime), court, lunch, and compensatory time, and (2) lost opportunity to obtain secondary employment. Lentz testified that while on gym duty he was ineligible for additional pay that active officers received as follows: $16,620.79 in lost “court time”; $10,147.77 in lost extended tour time; and $2,336.42 in lost lunch time. Lentz also testified that he lost $11,527.20 in compensatory time — “overtime that you would get, but you wouldn’t be paid for it. It would go on the books.” Finally, Lentz presented testimony from several colleagues that officers on gym duty could not pursue second *50 ary employment, costing, by his estimate, another $52,000 in lost part-time bricklaying work. All told, his evidence supported a maximum of $92,632.68 in economic losses. Given the total verdict of $800,000, the excess over $92,632.68 left $707,367.32 as allocable to his emotional harm. We thus examine the testimony underpinning that valuation.
On that score, Lentz presented testimony of other officers describing gym detail as “house arrest” and “the Black Hole of Calcutta.” Lentz himself explained that Defendants’ treatment of him made him feel punished and betrayed and that the investigation “put [his] reputation and hon- or in question” and “put a lot of things on hold.” As an example of things on hold, Lentz explained that he might have married his wife and started a family sooner, but did not want to subject others to his' ordeal. His psychological expert witness, Dr. Steinberg, testified that Lentz became depressed and suffered from an “adjustment disorder” that left him viewing gym duty like “going to jail or being in a coffin.” Steinberg reported that Lentz “had troubles with irritability and anger and isolation from friends and family, and a sense of being a pariah or a black sheep.” But Steinberg also admitted that the disorder proved to be temporary; it lasted “the time that [Lentz] was confined to the gymnasium and for a few months after he returned to work where he sort of had kind of a struggle to get back up to speed.” Assuming that the “few months” would be another three, Lentz’s emotional strain— consisting of an adjustment disorder, as well as feeling depressed and betrayed— lasted just over two years and produced no ongoing emotional harm.
Defending the award against the City’s claims of excessiveness, Lentz cites the large awards compensating other discrimination plaintiffs for emotional harm. Yet unlike those plaintiffs, Lentz’s emotional problems ended, and he did not lose his job, pay, benefits, or position. For that matter, his award is much higher than plaintiffs that suffered more emotional harm. See Bogle v. McClure, 332 F.3d 1347 (11th Cir.2003) ($500,000 per plaintiff); Bach v. First Union Nat. Bank, 149 Fed.Appx. 354 (6th Cir.2005) ($400,000); Moorer v. Baptist Mem’l Health Care Sys., 398 F.3d 469 (6th Cir.2005) ($250,000); Lilley v. BTM Corp., 958 F.2d 746 (6th Cir.1992) ($350,000). The harm suffered by Lentz is more comparable to discrimination plaintiffs like Jimmie Knight, who received a $150,000 verdict after he “testified at trial regarding his emotional distress, financial hardship, and reduced standard of living resulting from his inability to return to the police force.” Knight v. Metro. Govt. of Nashville & Davidson County, Tenn., 136 Fed.Appx. 755, 762 (6th Cir.2005); see also Giles v. Gen. Elec. Co., 245 F.3d 474, 488 (5th Cir.2001) (remitting an award from $300,000 to $150,000 where the plaintiff was “despondent, depressed, down and absolutely utterly discouraged about not being able to [go] back to work”).
We thus view the jury’s award as excessively compensating Lentz for temporary emotional harm, such that the denial of a remittitur here amounts to abuse of the court’s discretion. We reverse the district court’s denial of the motion for remittitur, and remand for the court to calculate an appropriate remittitur and, if necessary, retry the damages issue. See Skalka v. Fernald Env’t Restoration Mgmt. Corp., 178 F.3d 414, 425 (6th Cir.1999).
V.
Lentz cross-appeals the denial of prejudgment interest. We review this decision, too, for abuse of discretion. Anderson v. Whittaker Corp., 894 F.2d *51 804, 809 (6th Cir.1990). Prejudgment interest is appropriate if needed to make a plaintiff whole. See Thurman v. Yellow Freight Sys., Inc., 90 F.3d 1160, 1170 (6th Cir.1996). But awarding prejudgment interest is at the discretion of the district court, id., and the court did not deem it necessary. Moreover, since Lentz did not introduce evidence about when his injuries began, the court could not calculate how much interest, if any, would make him whole. For these reasons, the court did not abuse its discretion.
Finally, Lentz presses that the court erred by not holding that filing criminal charges constitutes adverse employment action. We need not address this issue given the disposition of the other claims.
VI.
We affirm the district court’s judgment, reverse the denial of the remittitur, deny Lentz’s cross-appeal, and remand for the district court to calculate an appropriate remittitur or hold a retrial on damages.

. Though we review the denial of Defendants' alternative motion for a new trial under the more deferential abuse of discretion standard, Skalka v. Fernald Envtl. Restoration Mgmt. Corp., 178 F.3d 414, 424 (6th Cir.1999), because we find the district court's decision survives de novo review, it clearly did not abuse its discretion.

. The Sixth Circuit imposes a more demanding test in reverse-discrimination cases. See Sutherland v. Michigan Dept. of Treasury, 344 F.3d 603, 614 (6th Cir.2003) ("[T]o satisfy the first prong of the prima facie case, the plaintiff must demonstrate background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.”) (internal quotation marks omitted). We need not address this prong of the modified test because the Defendants do not raise it on appeal.